[No. A016641. First Dist., Div. Two. Feb. 5, 1986.]

THOMAS R. LANYI et al., Plaintiffs and Appellants, v.
BENJAMIN GOLDBLUM et al., Defendants and Respondents.

COUNSEL

Hyde & Drath and Thomas F. Hyde for Plaintiffs and Appellants.

Alan M. Schuman for Defendants and Respondents.

OPINION

SMITH, ▓▓▓▓▓  In an action on a contract which provides for the recovery of attorney fees by a prevailing party, may a party who accepts an offer of compromise under Code of Civil Procedure section 998 recover attorney fees under Civil Code section 1717, as an item of costs after judgment, where the compromise agreement is silent on costs and fees? We will hold that such fees are recoverable and that the superior court therefore erred in denying fees in this case.

### BACKGROUND

Thomas R. Lanyi and Ricki Lanyi, appellants herein, entered into a written purchase agreement to buy real property in the City of San Rafael from respondents Benjamin Goldblum and May Britt Goldblum. The agreement provided that the prevailing party in an action on the contract would be

entitled to recover reasonable attorney fees as determined by the court.[1] Appellants initially deposited $3,000 into escrow as required under the agreement. Then, in order to protect against a potential foreclosure against respondents during the escrow period, appellants voluntarily increased their deposit by $4,000, to a total of $7,000.

When problems in obtaining financing arose, respondents sold the property to John D. Michael and Harriet L. Michael, without notice to appellants, and subsequently refused to release any of the $7,000 on deposit. Appellants filed suit in November 1979 against respondents and John and Harriet Michael, seeking specific performance, damages for breach of contract, return of their $7,000 with interest, and declaratory relief. Respondents answered, and trial was set for April 6, 1981. Appellants settled with defendants John and Harriet Michael and, by court order, obtained the release of $4,000 of the money in escrow.

On March 11, 1981, about three weeks before the scheduled trial, respondents made the following offer of compromise under Code of Civil Procedure section 998: "[D]efendants Benjamin Goldblum and May Britt Goldblum offer to allow judgment to be taken against them and in favor of plaintiff[s] for the amount of $3,000.00 currently held in escrow." The offer made no mention of costs or attorney fees. On April 3, appellants accepted in words which mirrored the offer and also made no mention of costs or fees.

Appellants moved on August 14 for entry of judgment and an award of costs and attorney fees.[2] Respondents opposed the award and, alternatively, moved to rescind the compromise agreement. On January 22, 1982, judgment was entered on the agreement for $3,000 plus costs of $387.07. The judgment specifically disallowed attorney fees. Appellants filed timely notice of appeal from that part of the judgment disallowing attorney fees.

## APPEAL

The sole issue presented is whether attorney fees should have been allowed as an item of costs. That issue pivots on the application of Civil Code section 1717 (hereafter cited only as section 1717) to judgments entered

---

[1]The provision reads: "[I]n the event legal action is instituted by any party to this agreement to enforce the terms of this agreement, or arising out of the execution of this agreement or the sale, the prevailing party shall be entitled to receive from the other party a reasonable attorney fee to be determined by the court in which such action is brought."

[2]An earlier-filed cost bill was ordered stricken on respondents' motion as prematurely filed because no judgment had yet been entered. The court had declined to rule at that time whether attorney fees could be awarded.

pursuant to Code of Civil Procedure section 998 (hereafter cited only as section 998), a question which evidently has not been decided in any published decision.

Our analysis begins with Code of Civil Procedure section 1032. Subdivision (a) of that section provides in part that, in a superior court action for the recovery of real property, for money or damages, or for title or possession of real property, costs are allowed of course to a "plaintiff upon a judgment in his favor; . . ."

Section 998 provides, in subdivision (a), that "costs allowed under Section[] . . . 1032 shall be withheld or augmented as provided in this section." Subdivision (b) of section 998 provides that, not less than 10 days prior to the start of trial, "any party may serve an offer in writing upon any other party to the action to allow judgment to be taken in accordance with the terms and conditions stated at that time. If such offer is accepted, the offer with proof of acceptance shall be filed and the clerk or the judge shall enter judgment accordingly. . . ." Subdivision (e) of the same section states, in part, "Any judgment entered pursuant to this section shall be deemed to be a compromise settlement."

In *Rappenecker* v. *Sea-Land Service, Inc.* (1979) 93 Cal.App.3d 256 [155 Cal.Rptr. 516], this court examined the two code sections quoted above, together with principles governing settlement agreements in general, and concluded that a section 998 compromise settlement did not foreclose a plaintiff's right to costs under section 1032 of the Code of Civil Procedure where the settlement terms were silent as to costs. (*Id.*, at pp. 261-264.) This court rejected the argument that application of general contract principles to a section 998 judgment required denial of statutory costs.[3]

---

[3]We did accept the premise that the judgment, entered by the clerk upon the settlement terms, should be treated as a contract. "Clearly, the clerk's judgment was a stipulated or consent judgment, and it has been reiterated by the appellate courts of this jurisdiction that a stipulation or consent judgment, being regarded as a contract between the parties, must be construed as any other contract. [Citations.] Defendant cites us to no authority which states that in the absence of specific language contained in the contract which provides for costs in the event of suit, the prevailing party cannot recover costs. Clearly section 1032 provides for the recovery of costs in some contract actions since it allows costs to a plaintiff upon a judgment in his favor in an action for the recovery of money (Code Civ. Proc., § 1032, subd. (a)), and '[i]n other actions than those mentioned in this section costs may be allowed or not, and, if allowed, may be apportioned between the parties, on the same or adverse sides, in the discretion of the court.' (Code Civ. Proc., § 1032, subd. (c).) Plaintiffs are not precluded from recovering their costs because a compromise settlement is construed as a contract." (*Rappenecker* v. *Sea-Land Service, Inc., supra*, 93 Cal.App.3d 256, 263.)

Since the decision in *Rappenecker,* our state Supreme Court has confirmed that general contract principles should apply to section 998 offers and acceptances where to do so will "neither conflict with the statute nor defeat its purpose" of encouraging the pretrial settlement of lawsuits. (*T. M. Cobb Co.* v. *Superior Court* (1984) 36 Cal.3d 273, 280 [204 Cal.Rptr. 143, 682 P.2d 338].)

(Pp. 262-263.) Also, there had been no showing of a legislative intent to exclude costs in compromise settlements. (P. 262.) Finally, it was noted that the matter of costs of suit fell outside the scope of the compromise terms. We explained: " '[A] judgment based on a stipulation of the parties "is binding only as to the matter consented to by the stipulation" [citation], is confined only to issues within the stipulation [citations], and does not cover matters not in the stipulation [citation].' [Citation.] Here the offer was made 'in full compromise settlement of [each plaintiff's] claims regarding his service aboard the SS MAYAGUEZ. . . .' Costs of suit do not fall within such service. 'Costs are allowances which are authorized to reimburse the successful party to an action or proceeding and are in the nature of incidental damages to indemnify a party against the expense of successfully asserting his rights.' [Citation.] By its failure to draft with precision its compromise offer, defendant cannot now be heard to claim that its language precludes the award of costs." (Pp. 263-264.)

The parties in this case agree that the superior court's award of costs (Code Civ. Proc., § 1032) was correct under the square holding of *Rappenecker*. They disagree, however, on whether the rationale of *Rappenecker* should be extended to the question of attorney fees awarded under section 1717 as an item of costs. While there have been two amendments of section 1717 since the 1981 compromise settlement reached in this case, the first paragraph of what is now subdivision (a) of that section reads, in substance, the same now as its predecessor paragraph did then. It currently provides: "In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce the provisions of that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the prevailing party, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to costs and necessary disbursements."[4]

Urging extension of *Rappenecker* to section 1717 awards, appellants rely by analogy on the reasoning in *Folsom v. Butte County Assn. of Governments* (1982) 32 Cal.3d 668 [186 Cal.Rptr. 589, 652 P.2d 437]. Plaintiffs in *Folsom* brought a taxpayer action (Code Civ. Proc., § 526a) against various government entities and officials, challenging the validity of funding

---

[4]In 1981, the first paragraph of the section (then without lettered subdivisions) provided: "In any action on a contract, where such contract specifically provides that attorney's fees and costs, which are incurred to enforce the provisions of such contract, shall be awarded to one of the parties, the prevailing party, whether he is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to costs and necessary disbursements." The section at that time read as originally enacted (Stats. 1968, ch. 266, § 1, p. 578).

allocations for street and road projects and seeking, in part, injunctive and other relief until such time as a public transportation system adequate to meet the needs of the county was put in operation. Included in their prayer was a request for costs and statutory attorney fees. (*Folsom, supra,* 32 Cal.3d at p. 673.) Before trial, plaintiffs entered into a settlement agreement. Part of that agreement called for plaintiffs to dismiss their action with prejudice upon local defendants' establishment of four specified transportation systems. (*Id.,* at pp. 674-675 & fn. 9.) Plaintiffs thereafter filed a cost bill and a motion for attorney fees under the private attorney general statute, section 1021.5 of the Code of Civil Procedure. The trial court awarded both costs and fees, and defendants appealed the award. (Pp. 675-676.)

The principal issue was whether the settlement agreement, which was silent as to costs and fees, "operated as a merger and bar of all issues framed by the complaint and hence left the trial court without jurisdiction to award costs or fees." (*Folsom, supra,* 32 Cal.3d at p. 676.) The Supreme Court held not, relying in large part on the reasoning in *Rappenecker.* First, the court made these general observations: "Compromise agreements are, of course, 'governed by the legal principles applicable to contracts generally.' [Citation.] They 'regulate and settle only such matters and differences as appear clearly to be comprehended in them by the intention of the parties and the necessary consequences thereof, and do not extend to matters which the parties never intended to include therein, although existing at the time.' [Citations.] Thus they ordinarily conclude all matters put in issue by the pleadings—that is, questions that otherwise would have been resolved at trial. [Citation.] They do not, however (absent affirmative agreement of the parties), conclude matters incidental to the judgment that were no part of the cause of the action. [¶] It is established that the right to costs is statutory and that costs 'are allowed solely as an incident of the judgment given upon the issues in the action. [Citation.] . . . They constitute no part of a judgment at the moment of its rendition . . . .' [Citations]." (*Id.,* at p. 677.) Citing *Rappenecker,* the court continued, "Thus it is that costs are allowed, absent the parties' express agreement to the contrary, following entry of a consent decree. . . ." (*Ibid.*)

Then, after examining the facts and holding of *Rappenecker,* the *Folsom* court concluded: "The same reasoning applies to attorney fees that are authorized solely by statute and hence are not a part of the cause of action.[5]

---

[5]The court distinguished "[those] situations where fees are part of the relief sought and hence must be pleaded and proved at trial. [Citation.] As the court explained in *Mabee* v. *Nurseryland Garden Centers, Inc.* (1979) 88 Cal.App.3d 420 . . .: '[W]here attorney fees are incurred in a prior action, or sought in a proceeding as damages—as for example in false imprisonment or malicious prosecution suits—or where recovery is sought in an action by

They are incidents to the cause, properly awarded after entry of a stipulated judgment, unless expressly or by necessary implication excluded by the stipulation." (*Folsom, supra,* 32 Cal.3d at p. 678, fn. omitted.) The compromise agreement in *Folsom,* which included no provision as to costs or statutory fees, therefore "did not deprive the trial court of jurisdiction to entertain either a cost bill or, under [Code of Civil Procedure] section 1021.5, a motion for fees." (P. 680.)

The combined reasoning of *Rappenecker* and *Folsom* compels the conclusion that attorney fees authorized by section 1717 are available to a party who prevails by a section 998 compromise settlement that is silent as to costs and fees.

The right to attorney fees in this case was, within the meaning of *Folsom,* "authorized solely by statute and . . . hence not a part of the cause of action." (*Folsom, supra,* 32 Cal.3d at p. 678.) Of course, the right to fees here, as in any case to which section 1717 applies, could be said to derive from the underlying contract as well as from statute, since it takes a contractual attorney fee provision to invoke the section 1717 right. In that sense, the right might not be viewed as authorized "solely by statute . . . ." (*Ibid.*) However, that phrasing, tailored to the facts of *Folsom* (where there was no underlying contractual fee provision), was used by the Supreme Court only to distinguish those actions in which attorney fees must, as a matter of procedure and evidence, be pleaded and proved at trial as an item of damages—as in false imprisonment or malicious prosecution suits (*id.,* at p. 678, fn. 16, quoted herein, *ante,* at fn. 5). ■ An action on a contract with an attorney fee provision, though frequently including a pleaded request for reasonable attorney fees as provided for in the contract itself, has not been treated by the courts as an action where the fees must be pleaded and proved at trial. Rather, the plaintiff may elect to have the court determine the fees under section 1717 as costs. (*Babcock* v. *Antis* (1979) 94 Cal.App.3d 823, 831-832 [156 Cal.Rptr. 673]; *Beneficial Standard Properties, Inc.* v. *Scharps* (1977) 67 Cal.App.3d 227, 231-232 [136 Cal.Rptr. 549]; *T.E.D. Bearing Co.* v. *Walter E. Heller & Co.* (1974) 38 Cal.App.3d 59, 64 [112 Cal.Rptr. 910].)

Respondents insist that appellants "exercised [their] option" to treat attorney fees solely as damages, to be pleaded and proved, by requesting the

---

an attorney against his client for an agreed or a reasonable fee, then the claim for attorney fees is part of the damage sought in the principal action. Only in such circumstances would the attorney fee be required to be pleaded and proven—as any other item of damages—at trial. No similar procedural and evidentiary base is required where "the attorney fee was not the cause of action but an incident to it." ' (*Id.,* at p. 425, citing *Huber* v. *Shedoudy* (1919) 180 Cal. 311, 314 . . . .)" (*Folsom, supra,* 32 Cal.3d 668, 678, fn. 16.)

fees in their causes of action. Respondents cite no authority for their position, however, and the very decisions allowing a plaintiff to take fees as costs under section 1717 are cases where those fees were specifically pleaded. (See, e.g., *Babcock* v. *Antis, supra,* 94 Cal.App.3d 823, 827; *Beneficial Standard Properties, Inc.* v. *Scharps, supra,* 67 Cal.App.3d 227, 229.) No election is made by merely pleading a contractual right to attorney fees.

■ Next, respondents offer two arguments why appellants should not be deemed to be "prevailing" parties entitled to fees under section 1717. First, they maintain that the underlying contract in this action was "superseded" by the subsequent section 998 compromise agreement. Since that new "contract" contained no provision for attorney fees, they argue, section 1717 cannot apply. This is essentially the "merger and bar" argument raised and rejected in *Folsom.*[6] It therefore requires no discussion except to note that the argument would have to fail for an independent reason in the context of section 1717. Under respondents' theory, we look to the "superseding" settlement contract to determine whether section 1717 applies. However, subdivision (a) of the section unambiguously applies by its terms to the contract *on which the underlying action is brought,* not to any subsequent settlement agreement. No "action" was brought on the settlement contract; it was simply entered as a judgment under section 998.[7]

Respondents' second argument depends on a construction of subdivisions (b)(1) and (b)(2) of section 1717, which were added effective January 1982, the month before judgment on the section 998 compromise was entered in this case. (Stats. 1981, ch. 888, § 1, pp. 3399-3400; see *Bank of Idaho* v. *Pine Avenue Associates* (1982) 137 Cal.App.3d 5, 11 [186 Cal.Rptr. 695].) Subdivision (b)(1) provides that the court "shall determine who is the prevailing party, whether or not the suit proceeds to final judgment" and designates the "prevailing party" as the party entitled to costs of suit, including

---

[6]The trial court's notice of intended ruling states: "[C]osts shall not include [a]ttorney's fees as the right to such fees, if any, was a right under the contract transaction and all such rights were settled for the sum of $3,000. That $3,000 sum included any amount which might have been awarded as [a]ttorney's fees had the case been tried."

The transcript of the hearing on the attorney fee motion similarly leaves no room for doubt that the court had a merger and bar theory in mind. Steve Stoltz, counsel for respondents, argued: "A CCP offer and acceptance is deemed a separate contract. No mention was made of attorney's fees in that contract[;] hence there's no basis for awarding any party attorney's fees in this case." After hearing opposing argument from appellants' counsel, the court stated: "It seems to me that you've got something like Mr. Stoltz indicates, a new contract and offer acceptance almost under a 998. [¶] . . . [I] look upon a 998 as sort of a new offer and acceptance between the parties regardless of the nature of the underlying cause of action."

[7]Subdivision (a) of section 1717 authorizes an award of fees to the prevailing party "[i]n any *action on a contract,* where the contract specifically provides that attorney's fees and costs, which are incurred to enforce the provisions of that contract, shall be awarded . . . ." (Italics added.)

attorney fees.[8] However, subdivision (b)(2) provides, in pertinent part, as follows: "Where an action has been *voluntarily dismissed* or *dismissed pursuant to a settlement of the case,* there shall be no prevailing party for purposes of this section." (Italics added.) That language creates an exception "where there shall be no prevailing party even though the suit is finally disposed of in a manner entitling some party to costs of suit." (*Bank of Idaho* v. *Pine Avenue Associates, supra,* 137 Cal.App.3d at p. 16.)

A settlement reached under section 998 results in a *judgment* entered by the clerk or the court. (§ 998, subd. (b).) Subdivision (b)(2) of section 1717 by its terms denies prevailing party status only where a settlement results in *dismissal.* When the Legislature enacted subdivision (b)(2) in 1981, it was presumptively aware that section 998 settlements result in judgments, not dismissals. We therefore must assume, absent some strong indication of contrary intent, that the amendment was not meant to bar fees after a section 998 judgment. (*Consumer Product Safety Comm'n* v. *GTE Sylvania* (1980) 447 U.S. 102, 108 [64 L.Ed.2d 766, 772, 100 S.Ct. 2051]; *Guelfi* v. *Marin County Employees' Retirement Assn.* (1983) 145 Cal.App.3d 297, 302-303 [193 Cal.Rptr. 343].) Respondents maintain that there is no rational distinction between a dismissal following settlement and a judgment entered upon a settlement and that the amendment therefore should be construed to bar fees in section 998 settlements as well. We reject the argument because it appears that the amendment was intended to codify preexisting case law and that, under that case law, a section 998 judgment would not preclude a fee award.

In *International Industries, Inc.* v. *Olen* (1978) 21 Cal.3d 218 [145 Cal.Rptr. 691, 577 P.2d 1031], the Supreme Court held four-to-three that a defendant cannot recover section 1717 attorney fees where a plaintiff voluntarily dismisses without prejudice before trial. (*Id.,* at p. 223.) The court noted that the same rule had been applied, for procedural reasons, to contractual fee provisions prior to the 1968 enactment of section 1717 and that the enactment of the section had removed that procedural bar. Nevertheless, the majority concluded that "sound public policy and recognized equitable considerations" required continued adherence to the rule. (*Ibid.*) Preferring the flexible, equitable approach to attorney fee clauses taken in *Ecco-Phoenix Electric Corp.* v. *Howard J. White, Inc.* (1969) 1 Cal.3d 266, 272 [81 Cal.Rptr. 849, 461 P.2d 33], over a mechanical approach taken in some older cases, and finding in section 1717 a parallel legislative preference, the majority reasoned: "Because award of contractual attorney fees is governed

---

[8]"Reasonable attorney's fees shall be fixed by the court, upon notice and motion by a party, and shall be an element of the costs of suit." (§ 1717, subd. (a).) Attorney fees under section 1717 have long been regarded as "costs." (*T.E.D. Bearing Co.* v. *Walter E. Heller & Co., supra,* 38 Cal.App.3d 59, 64.)

by equitable principles, we must reject any rule that permits a defendant to automatically recover fees when the plaintiff has voluntarily dismissed before trial. Although a plaintiff may voluntarily dismiss before trial because he learns that his action is without merit, obviously other reasons may exist causing him to terminate the action. For example, the defendant may grant plaintiff—short of trial—all or substantially all relief sought, or the plaintiff may learn the defendant is insolvent, rendering any judgment hollow. Such defendants may not recover attorney fees within the equitable principles of *Ecco-Phoenix Electric Corp.* Moreover, permitting recovery of attorney fees by defendant in all cases of voluntary dismissal before trial would encourage plaintiffs to maintain pointless litigation in moot cases or against insolvent defendants to avoid liability for those fees." (*International Industries, Inc.* v. *Olen, supra,* 21 Cal.3d at p. 224.) The majority rejected, as too burdensome for trial courts, the suggestion that "in pretrial dismissal cases the court should determine whether, and to what extent, the complaint is meritorious and award attorney fees accordingly." (*Ibid.*) Left with what it called a "Hobson's choice," the majority held that "the efficient and equitable administration of justice requires that the parties in pretrial dismissal cases be left to bear their own attorney fees, whether claim is asserted on the basis of the contract or section 1717's reciprocal right." (*Id.,* at p. 225.)[9]

The 1981 amendment of section 1717 was evidently in response to the *International Industries* decision. Two parts of that amendment are particularly significant here. First, in *International Industries,* the court had observed that "the form of the judgment is not necessarily controlling, but must give way to equitable considerations. [Citations.]" (21 Cal.3d 218, 224.) The 1981 amendment eliminated section 1717's former rigid definition of "prevailing party" as "the party in whose favor final judgment was entered" (Stats. 1968, ch. 266, § 1, p. 578) and replaced it with subdivision (b)(1), which now requires the trial court to "determine who is the prevailing party, whether or not the suit proceeds to final judgment, . . ." (Cf. discussion in *Bank of Idaho* v. *Pine Avenue Associates, supra,* 137 Cal.App.3d 5, 15-16.) This greater range of trial court discretion and required involvement in the merits of the litigation is not only consistent with *International Industries* but, further, suggests that the Legislature was not as reluctant as the Supreme Court to utilize "scarce judicial resources" in

---

[9]"In pretrial dismissal cases, we are faced with a Hobson's choice of either (1) adopting an automatic right to attorney fees, thereby encouraging the maintenance of pointless litigation and violating the equitable principles which should govern attorney fee clauses, (2) providing for application of equitable considerations, requiring use of scarce judicial resources for trial of the merits of dismissed actions, or (3) continuing the former rule, denying attorney fees in spite of agreement." (*International Industries, Inc.* v. *Olen, supra,* 21 Cal.3d 218, 225.)

the determination of who prevails, especially where there has been no final judgment (see fn. 9, *ante*).

The second significant part of the amendment is, as noted above, the addition of subdivision (b)(2), which denies prevailing party status to any party where the action has been "voluntarily dismissed or dismissed pursuant to a settlement of the case, . . ." (§ 1717, subd. (b)(2).) This reflects an evident endorsement of the Supreme Court's specific holding in *International Industries*. A question arises, however, because subdivision (b)(2)'s language, while faithful to language found in the Supreme Court's opinion, is considerably broader than the court's actual holding.

The court's holding addressed the question of voluntary dismissals *without prejudice*. (*International Industries, Inc.* v. *Olen, supra,* 21 Cal.3d 218, 220-221.) Although the court spoke throughout the analysis portion of the opinion in terms of voluntary dismissal, without distinguishing between those *with* and those *without* prejudice, the distinction was vital, as the court's later opinion in *Folsom* v. *Butte County Assn. of Governments, supra,* 32 Cal.3d 668, makes especially clear. The settlement in *Folsom* called for dismissal *with* prejudice (*Folsom, supra,* at pp. 671, 675) and was held not to bar an award of fees under Code of Civil Procedure section 1021.5, which, like the current version of section 1717, does not require a final judgment. Discussing the concept of "prevailing party" in that context, the Supreme Court noted that "a section 1021.5 award is not barred because the case was won on a preliminary issue [citation] or because it was *settled before trial.* [Citation.]" (*Id.,* at p. 685, italics added, fn. omitted.) The court then distinguished its prior holding in *International Industries,* stating: "[I]t is no bar to a fee award that plaintiffs have settled the matter by agreeing to dismiss the action, with prejudice, on performance of defendants' promises. Contractual fees should not be awarded under Civil Code section 1717 where plaintiffs voluntarily dismiss an action *without prejudice* before trial. (*International Industries, Inc.* v. *Olen* [*supra*] 21 Cal.3d 218 . . . .) That rule, however, is premised on the avoidance of pointless litigation and, thus, conservation of judicial resources (*id.,* at p. 225), as well as statutory language providing that the prevailing party is 'the party in whose favor final judgment is rendered.'" (*Id.,* at p. 686, fn. 34, italics in original.)

Nothing in the holding or rationale of *International Industries,* the evident basis for the 1981 amendment, would bar recovery of attorney fees following a section 998 settlement and judgment. The equitable and judicial efficiency considerations are different than those arising in cases of voluntary dismissal without prejudice. First of all, the resulting judgment under section 998, unlike a dismissal without prejudice, finally determines the rights

of the parties to the action (Code Civ. Proc., § 577; *Gorman* v. *Holte* (1985) 164 Cal.App.3d 984, 988 [211 Cal.Rptr. 34]), leaving no risk that judicial resources will be squandered in making interim determinations of "success" in ongoing actions. Second, section 1717's formerly rigid requirement of a final judgment, while met in the case of a section 998 judgment, has been relaxed to allow a trial court greater discretion in determining the prevailing party (§ 1717, subd. (b)(1))—a role that now requires the trial court to examine the equities of the action in greater depth than when *International Industries* was decided. (See, e.g., *Nasser* v. *Superior Court* (1984) 156 Cal.App.3d 52, 59 [202 Cal.Rptr. 552].) The determination of who has "prevailed" by a section 998 compromise settlement leaves the trial court with some basis for deciding "where the equities . . . lie." (*Bank of Idaho* v. *Pine Avenue Associates, supra,* 137 Cal.App.3d 5, 18.) Of course, the trial court is completely relieved of its duty to determine the prevailing party in those cases where, for sake of certainty, the parties allocate costs and fees for themselves as part of the compromise terms. Finally, allowing statutory attorney fees after a section 998 compromise settlement that is silent on that point does not encourage the maintenance of pointless or moot litigation through fear of incurring attorney fees—a prime concern of the court in *International Industries.* A plaintiff can always eschew section 998 compromise settlement and instead voluntarily dismiss within the protective rule of *International Industries,* thereby avoiding the risk of incurring section 1717 fees.

Subdivision (b)(2) of section 1717 appears to be intended to codify the holding in *International Industries* that a dismissal without prejudice precludes, on policy grounds, an award of statutory (or contractual) attorney fees. That the language of the subdivision does not distinguish between dismissals with prejudice and those without prejudice is more likely attributable to lack of clarity in the *International Industries* decision than to an intent to broaden that decision's holding. For that reason, we would find no inconsistency between the statute and the allowance of attorney fees after a section 998 compromise settlement even if we could ignore subdivision (b)(2)'s express application to dismissals rather than judgments.

The section 998 offer and acceptance in this case stated only that judgment would be taken against respondents "for the amount of $3,000.00 currently held in escrow." Applying contract principles, the parties' failure to "expressly or by necessary implication" exclude statutory fees, as an incident to the cause,[10] means that the fees were not contemplated in settlement and

---

[10] We reject respondents' novel argument that in order for costs or fees to be an "incident" (or "incidental") to the cause they must be *incidental in amount*—i.e., that they must bear some reasonable relation to the requested relief in a monetary sense. Statutory costs and fees are considered "incident" to the cause or judgment only in the sense that they are "no part of the cause of the action" (*Folsom* v. *Butte County Assn. of Governments, supra,* 32 Cal.3d 668, 677).

therefore may be awarded. (*Folsom* v. *Butte County Assn. of Governments, supra,* 32 Cal.3d 668, 678; *Rappenecker* v. *Sea-Land Services, Inc., supra,* 93 Cal.App.3d 256, 263.) There is no merit to respondents' contention that the trial court specifically found, as a question of fact, that the parties intended by the settlement to exclude recovery of fees under the contract. First, the question before us is whether the parties intended to exclude recovery of *statutory* fees, not contractual fees. Second, the supposed "finding" to which respondents point is found in the court's oral comments at the hearing and its statement of intended ruling, which we have concluded represent an erroneous legal conclusion based on "merger and bar"—not a factual conclusion. (See fn. 6, *ante.*)

We conclude that the compromise settlement did not encompass section 1717 fees. We cannot infer a waiver of the fees from mere silence (*Folsom* v. *Butte County Assn. of Governments, supra,* 32 Cal.3d 668, 680-681), and no extrinsic evidence of intent was offered.

As a final matter, respondents argue that allowing section 1717 attorney fees promotes "sandbagging" and "manipulative tactics" that work against section 998's policy of promoting the settlement of cases before trial (*T. M. Cobb Co.* v. *Superior Court, supra,* 36 Cal.3d 273, 280). Their complaint is essentially that it would be unfair in this case to allow fees because they were unaware of their potential liability for statutory fees and hence did not draft against them, and that this might happen to others. That falls short of a compelling public policy argument. The implications of *Folsom* and *Rappenecker* are reasonably clear, as is section 1717's denial of fees only in cases of dismissals. Any uncertainty could have been eliminated by cautious drafting to specify the parties' understanding, if any, on this point.[11]

The judgment has been appealed only insofar as it denies attorney fees, and it must to that extent be reversed and remanded for an award of reasonable attorney fees. It has never been disputed, in this court or the trial court, that appellants are prevailing parties for purposes of section 1717 based on the equitable considerations of the case. However, the trial court will have to determine on remand whether the amount of fees claimed is reasonable, a disputed question that the court did not reach. (*Beneficial Standard Properties, Inc.* v. *Scharps, supra,* 67 Cal.App.3d 227, 232.) Also, appellants are entitled by operation of section 1717 to reasonable attorney fees for services rendered on this appeal. (*T.E.D. Bearing Co.* v. *Walter E. Heller & Co., supra,* 38 Cal.App.3d 59, 64-65; cf. *Palmer* v.

[11]We note that respondents have not filed a precautionary cross-appeal to preserve for review the implicit denial of their alternative motion to have the compromise agreement rescinded for mutual mistake. (See *Folsom, supra,* 32 Cal.3d 668, 679.) Moreover, from the limited record before us, it appears that no testimony was ever offered on the motion.

*Agee* (1978) 87 Cal.App.3d 377, 387-388 [150 Cal.Rptr. 841].) Because the cause must be remanded to determine the reasonableness of fees already requested, we leave to the trial court as well the question of what attorney fees should be awarded for this appeal. Appellants are, of course, entitled to costs on appeal under rule 26 of the California Rules of Court for having obtained reversal of the judgment.

## DISPOSITION

That part of the judgment denying appellants reasonable attorney fees as costs is reversed; the cause is remanded for further proceedings consistent with this opinion.

Kline, P. J., and Rouse, J., concurred.