Filed 6/21/17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| MONSTER, LLC et al., | B278289 |
| Petitioners, | (Los Angeles County Super. Ct. No. BC595235) |
| v. | |
| THE SUPERIOR COURT OF LOS ANGELES COUNTY, | |
| Respondent; | |
| BEATS ELECTRONICS, LLC, | |
| Real Party in Interest. | |

ORIGINAL PROCEEDING. Petition for writ of mandate, William F. Fahey, Judge. Petition for writ of mandate granted.

Cotchett, Pitre & McCarthy, Joseph W. Cotchett, Philip L. Gregory; Gordon & Reese, Gary J. Lorch and Elizabeth B. Vanalek for Petitioners.

No appearance for Respondent.

Boies, Schiller & Flexner, William A. Isaacson and Karen L. Dunn for Real Party in Interest.

_____

Petitioners Monster LLC and its founder, Noel Lee, filed a tort action alleging Beats Electronics had engaged in a fraudulent scheme to deprive them of their interest in the company. In its answer, Beats asserted all of the petitioners' claims were barred by release provisions set forth in the parties' prior written agreements. Beats also filed a cross-complaint alleging that: (1) petitioners had breached the terms of those written agreements by filing their complaint; and (2) petitioners' acts had damaged Beats by causing the company to incur attorney's fees and other litigation costs.

Beats filed a motion for summary judgment seeking dismissal of petitioners' claims based on the contractual release provisions. The court granted the motion, and set a trial on Beats's cross-claims for breach of contract. At a subsequent case management conference, Beats argued that Civil Code section 1717 required the court, rather than a jury, to determine the amount of attorney's fees it was entitled to recover as damages on its cross-claims. Petitioners, however, asserted that because Beats was seeking its attorney's fees as a form of contract damages, they were entitled to a jury trial on the issue. After receiving supplemental briefing, the court entered an order directing that the amount of Beats's attorney's fees be resolved through a noticed motion.

Petitioners filed a petition for writ of mandate seeking an order directing the trial court to vacate its order, and enter a new order granting them a jury trial on the issue of attorney's fees. We issued an order to show cause, and now grant the petition.

2

# FACTUAL BACKGROUND

## A. *Summary of Events Preceding the Filing of Monster's Complaint*

### 1. *Summary of the parties' licensing and manufacturing agreements*

Noel Lee is the founder and manager of Monster LLC, an audio equipment company. Between 2005 and 2008, Lee and Monster (collectively Monster) entered into discussions with Andre Young (also known as Dr. Dre, hereafter Dre) and Jimmy Iovine to design and manufacture a new line of headphones. In January of 2008, Iovine and Dre signed a licensing agreement granting Monster the right to manufacture and sell "Beats by Dre"-branded headphones. After entering into the agreement, Dre and Iovine founded "Beats Electronics" (Beats).

In August of 2009, Monster and Beats entered into an amended agreement that superseded the 2008 licensing agreement. The amended agreement included a provision stating that Beats had "the right to terminate [the agreement] . . . at any time on or after the earlier of (i) January 7, 2013 or (ii) the closing of a transaction that results in a Change of Control." Beats's operating agreement defined the term "Change of Control" to mean the acquisition of more than 50 percent of the company. The amended agreement further provided that upon termination, Monster would be required to: (1) transfer its ownership rights to the "industrial design" of all Beats-branded products to Beats; and (2) grant Beats a non-exclusive license to use any intellectual property that was necessary for the "continued manufacture and sale of all Beats products." The

amended agreement also contained a provision granting Lee a 5 percent ownership interest in Beats.

### 2. *Termination of the 2009 licensing agreement*

In August of 2011, mobile phone manufacturer HTC agreed to purchase a 51 percent interest in Beats for approximately $300 million. Several weeks later, Beats notified Monster that the sale to HTC qualified as a "Change of Control," and that Beats intended to exercise its right to terminate the 2009 licensing agreement. In June of 2012, Beats and Monster executed a "Termination Agreement and Mutual Release" (Termination Agreement) setting forth the terms of Monster's "transition and separation" from Beats.

The "Recitals" section of the Termination Agreement stated that the parties had entered into the agreement "to affirm the termination" of their prior agreements, including the 2009 licensing agreement, and to "mutually release each other from [existing] claims, . . . and set forth the [p]arties' remaining obligations to each other." Under the terms of the Termination Agreement, Monster was provided "the right to act as Beats' sales representative and distributor through the end of 2012, and the right to certain royalties through the end of 2013." Monster, in turn, agreed to waive "any and all causes of action, claims, rights, judgments . . . or liabilities[,] . . . arising under or in connection with the performance or termination of the [prior licensing agreements]."

The Termination Agreement also included an attorney's fees provision stating: "In the event that any [p]arty brings an action to enforce or affect its rights under this Agreement, the prevailing [p]arty . . . shall be entitled to recover its costs and

4

expenses, including, . . . reasonable attorney's fees, incurred in connection with such an action."

### 3. *Lee's sale of his 5 percent interest in Beats*

In December of 2012, Lee decided to sell back three quarters of the 5 percent interest he had obtained in Beats pursuant to the 2009 licensing agreement, leaving him with a 1.25 percent ownership interest in the company. The terms of the sale were set forth in the "2012 Unit Repurchase Agreement," which contained a provision releasing all claims related to the transaction, including claims for fraud or fraudulent inducement.

In October of 2013, Lee elected to sell Beats back his remaining 1.25 percent interest in the company. The terms of the sale were set forth in the "2013 Unit Repurchase Agreement," which contained a provision stating that both parties agreed to release all claims "pertaining or relating to the Securities, including without limitation, causes of action for breach of fiduciary duty, negligent misrepresentation, fraud and fraudulent inducement. . . ." The 2013 agreement also included an indemnity provision stating, in relevant part: "Each party to this Agreement agrees to defend, indemnify and hold harmless the other party . . . from and against all losses, damages, liabilities, claims . . . and expenses (including reasonable attorneys' fees) arising out of, relating to or resulting from any breach of this Agreement, including any representation or warranties contained therein, by the indemnifying party."

Approximately seven months after the parties executed the 2013 Unit Repurchase Agreement, Apple acquired Beats for over $3 billion.

5

### B. Summary of the Parties' Pleadings

In January of 2015, Monster filed a tort action alleging Beats and HTC had engaged in a fraudulent scheme to divest Monster of its interest in Beats and the "Beats by Dre" line of headphones. According to the complaint, HTC's decision to acquire a 51 percent interest in Beats had been a "sham 'Change of Control' event" that was intended to force Monster out of the company, and allow Beats to "assume complete manufacture, promotion, distribution and sales of the 'Beats by Dre' product line." The complaint further alleged that less than a month after Monster had finalized the Termination Agreement with Beats, HTC loaned Beats over $200 million, which Beats then used to purchase back half of HTC's 51 percent interest in the company.

The complaint also alleged Beats had fraudulently induced Lee to sell back his remaining 1.25 percent interest in the company. Lee claimed that before agreeing to sell back his interest, he had asked Iovine and Beats President Luke Wood whether the company expected any "liquidity events" in the near future. Iovine and Wood both told Lee no such events were planned. Based on these representations, Lee agreed to sell his remaining interest in Beats back to the company for approximately $5.5 million. Eight months later, Lee learned Apple was acquiring Beats for $3.2 billion, increasing the value of Lee's former 1.25 percent interest to over $30 million.[1]

---

[1] In addition to the fraud claims, Monster's complaint alleged related claims for breach of the duty of trust and confidence, breach of fiduciary duty and statutory claims arising under the Business and Professions Code and the Corporations Code.

In its answer to the complaint, Beats asserted waiver as an affirmative defense, claiming that all of Monster's causes of actions were barred by the release provisions set forth in the Termination Agreement, the 2012 Unit Repurchase Agreement and the 2013 Unit Repurchase Agreement.

Beats also filed a cross-complaint alleging Monster and Lee had breached the terms of those agreements by filing their lawsuit. In its first cause of action for breach of the Termination Agreement, Beats alleged: "The gravamen of Monster's claims against Beats . . . . is that the HTC transaction was a 'sham "Change of Control" transaction' executed solely to 'exclude Monster and Lee from the sale of the "Beats by Dre" product line.' [¶] . . . [¶] By bringing these 'sham' claims Monster breached the Termination Agreement's release provision. . . . [¶] Monster's breach of the Termination Agreement has damaged and continues to damage Beats. Beats has been, and will continue to be, forced to expend money, time, and other resources in order to defend against Monster's meritless and released claims in this litigation – damages that, but for Monster's breach, it would not have suffered."

In its third cause of action for breach of the 2013 Unit Repurchase Agreement, Beats similarly alleged: "The gravamen of Lee's claim . . . is that he was coerced and deceived into selling his shares of Beats in order to deprive him of any profits from the eventual (though unknown at the time) sale of Beats to Apple. [¶] . . . [¶] By bringing these stock sale claims Lee breached the release provisions of the 2013 Unit Repurchase Agreements. . . . [¶] Lee's breach of the 2013 Unit Repurchase Agreement has damaged and continues to damage Beats. Beats has been, and will continue to be, forced to expend money, time, and other

7

resources in order to defend against Lee's meritless and released claims in this litigation, damages that, but for Lee's breach, it would not have suffered."[2]

Both parties initially requested a jury trial on all of the claims and cross-claims. In its proposed jury instructions, Beats requested the court provide the following instruction with respect to damages on its cross-claims: "Beats claims damages for attorney fees and costs reasonably and necessarily incurred in defending all claims brought by Monster and [Lee]. . . . [¶] Beats must prove the amount of attorney fees and costs."

### C. Trial Court Proceedings

On April 28, 2016, Beats filed a motion for summary judgment on the claims pleaded in Monster's complaint. Beats argued that all of Monster's claims were barred by the release provisions set forth in the Termination Agreement, the 2012 Unit Purchase Agreement and the 2013 Unit Purchase Agreement. Beats's motion did not address its cross-claims for breach of contract. The court granted Beats's motion, concluding that "the releases agreed to by [Monster and Lee] are valid and enforceable and act as a complete bar to [their] claims against Beats." The court's order directed that Beats was "dismissed with prejudice from plaintiff's complaint," and that the case was to "proceed to trial solely on the first and third causes of action of Beats'[s] [c]ross-complaint against Monster and Lee."

---

[2] Beats dismissed without prejudice the second cause of action in its cross-complaint, which alleged Monster had breached a non-disparagement provision in the Termination Agreement.

8

At a subsequent case management conference, Beats's counsel argued that under Civil Code section 1717 (section 1717), the damages it was seeking on its cross-claims, which consisted solely of attorney's fees and costs incurred in defending itself against Monster's fraud claims, should be resolved through a noticed motion to the court, rather than by jury trial. Counsel explained that section 1717 was applicable because its cross-claims qualified as actions to enforce contracts that contained attorney's fees provisions (specifically, the Termination Agreement and the 2013 Unit Repurchase Agreement). Monster's counsel, however, argued that because Beats had "ple[aded] and s[ought] their attorney's fees as an element of their [contract] damages," the issue must "go[] to a trier of fact." The court requested the parties submit supplemental briefing, and scheduled a hearing to determine whether Monster was entitled to a jury trial on the issue of attorney's fees.

In its supplemental briefing, Beats argued that section 1717 required the court, rather than a jury, to fix attorney's fees in any action brought to enforce a contract containing an attorney's fees provision. Beats also argued that the fact it was seeking attorney's fees as damages, rather than as a form of posttrial costs, was immaterial, asserting that Monster had not offered any "logical explanation for why California law would or should treat the assessment of pre-trial fees by a different procedure than fees incurred during and after trial." Beats also argued that holding a jury trial on the issue of attorney's fees would be "impractical[]" because the jury would not be able to account for fees incurred "in connection with time spent at trial and posttrial."

9

Monster, however, argued that section 1717 was inapplicable because Beats was not seeking to recover its attorney's fees based on its status as the prevailing party on Monster's fraud claims, but rather as damages on its cross-claims for breach of contract. Monster contended that numerous prior cases had held the right to jury trial attaches when a party seeks attorney's fees as damages, rather than as a cost of litigating its claims. Monster also argued that allowing the jury to determine the amount of fees Beats had incurred in defending itself against Monster's claims would not be impractical, explaining that once the jury had resolved Beats's contract claims (including a determination of damages), Beats could then seek to recover the attorney's fees it had incurred in litigating its breach of contract claims through a noticed motion to the court under section 1717.

After hearing argument, the court ordered that the "attorney's fees issue" would be "heard by way of a noticed motion resolved by the court." The court's ordered explained: "Section 1717 is right on point. . . . That section provides that attorney's fees are to be fixed by the court. Similarly, [Code of Civil Procedure] section 1033.5 provides that attorney's fees based upon contract are to be fixed by way of a noticed motion, resolved by the court." The court further explained that the Supreme Court had repeatedly acknowledged that "trial courts are best equipped to resolve attorney's fees issues."

On October 17, 2016, Monster filed a petition for writ of mandate requiring the trial court to vacate its order, and enter a new order directing that a jury trial be held to assess the amount of attorney's fees, if any, Beats was entitled to recover as damages on its cross-claims. Monster also requested that we stay the trial court proceedings pending resolution of the writ petition.

10

After receiving an opposition to the petition for writ of mandate, we issued an order to show cause, and stayed the trial court proceedings pending our review.

## DISCUSSION

### *A. Availability of Writ Relief and Standard of Review*

"'A writ of mandate is a proper remedy to secure the right to a jury trial. . . .  [E]ven if [the complaining party] could [obtain] . . . reversal of the judgment [after a bench trial], such a procedure would be inefficient and time consuming.'" (*Shaw v. Superior Court* (2017) 2 Cal.5th 983, 991 (*Shaw*) [citing and quoting with approval *Byram v. Superior Court* (1977) 74 Cal.App.3d 648, 654]; see also *Shaw, supra*, 2 Cal.5th at p. 992 ["our . . . court has on a number of occasions reviewed the validity of a trial court ruling denying a jury trial by means of a pretrial extraordinary writ proceeding"].)  As explained by one court, although the denial of a jury trial is "reviewable on appeal from the judgment," review by way of extraordinary writ is "normally . . . the better practice" so as to avoid "time needlessly expended in a court trial."  (*Selby Constructors v. McCarthy* (1979) 91 Cal.App.3d 517, 522-523.)

"The issue whether [a party is] constitutionally entitled to a jury trial . . . is a pure question of law that we review de novo." (*Caira v. Offner* (2005) 126 Cal.App.4th 12, 23; see also *Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 799.)

11

### B. Summary of Applicable Legal Principles

#### 1. Right to a jury trial in suits seeking damages for breach of contract

"Article I, section 16 of the California Constitution declares broadly that '[t]rial by jury is an inviolate right and shall be secured to all. . . .' Notwithstanding the breadth of this declaration, past California cases make clear 'that . . . . "[a] jury trial is a matter of right in a civil action at law, but not in equity.'" [Citations.]" (*Shaw, supra,* 2 Cal.5th at pp. 995-996.) "[A] suit to recover damages for . . . breach of contract is an action at law in which a right to jury trial ordinarily exists." (*Raedeke v. Gibraltar Sav. & Loan Assn.* (1974) 10 Cal.3d 665, 671; *C & K Engineering Contractors v. Amber Steel Co.* (1978) 23 Cal.3d 1, 9 ["the complaint purports to seek recovery of damages for breach of contract, in form an action at law in which a right to jury trial ordinarily would exist"].)

"When the right to jury trial exists, it provides the right to have a jury try and determine issues of fact." (*Shaw, supra*, 2 Cal.5th at p. 993 [emphasis omitted]), which includes the "the assessment of damages." (*Dorsey v. Barba* (1952) 38 Cal.2d 350, 356 (*Dorsey*) ["issues of fact shall be decided by a jury, and the assessment of damages is ordinarily a question of fact"] [overruled on another ground in *Jehl v. Southern Pac. Co.* (1967) 66 Cal.2d 821, 828].)

"The jury as a fact-finding body occupies so firm and important a place in our system of jurisprudence that any interference with its function in this respect must be examined with the utmost care." (*Dorsey, supra,* 38 Cal.2d at p. 356.)

## 2. *Civil Code section 1717*

Civil Code section 1717 provides, in relevant part: "(a) In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs. [¶] . . . [¶] Reasonable attorney's fees shall be fixed by the court, and shall be an element of the costs of suit. (b)(1) The court, upon notice and motion by a party, shall determine who is the party prevailing on the contract for purposes of this section, whether or not the suit proceeds to final judgment."

"The primary purpose of section 1717 is 'to establish mutuality of remedy when a contractual provision makes recovery of attorney's fees available to only one party, and to prevent the oppressive use of one-sided attorneys fee provisions.' [Citations.]" (*Hjelm v. Prometheus Real Estate Group, Inc.* (2016) 3 Cal.App.5th 1155, 1168.) Our courts have interpreted the statute to make an otherwise unilateral attorney's fee provision reciprocal in two situations. "The first . . . is 'when the contract provides the right to one party but not to the other.' [Citation.] In this situation, the effect of section 1717 is to allow recovery of attorney fees by whichever contracting party prevails, 'whether he or she is the party specified in the contract or not.' [Citation]. [¶] 'The second situation in which section 1717 [applies] . . . is when a person sued on a contract containing a provision for attorney fees to the prevailing party defends the litigation 'by successfully arguing the inapplicability, invalidity,

13

unenforceability, or nonexistence of the same contract." (*Santisas v. Goodin* (1998) 17 Cal.4th 599, 615 (*Santisas*).) Under those circumstances, the statute "allows [the] party who defeats the contract claim . . . to recover attorney fees under that contract if the opposing party would have been entitled to attorney fees had it prevailed. [Citation.]" (*Brown Bark III, L.P. v. Haver* (2013) 219 Cal.App.4th 809, 819 (*Brown Bark*).)

As a general matter, "[t]ort and other noncontract claims are not subject to section 1717 and its reciprocity principles. [Citations.] [Although] [t]he parties to a contract are free to agree that one or more of them shall recover their attorney fees if they prevail on a tort or other noncontract claim, . . . the right to recover those fees depends solely on the contractual language. [Citation.] Section 1717 does not make a unilateral fee provision reciprocal on tort or other noncontract claims." (*Brown Bark, supra,* 219 Cal.App.4th at p. 819; see also *Santisas, supra,* 17 Cal.4th at p. 615.)

There is currently a split of authority regarding whether section 1717 applies when a defendant successfully asserts a contract containing an attorney's fees provision as a defense to a tort or other noncontract claim. (Compare *Gil v. Mansano* (2004) 121 Cal.App.4th 739 [section 1717 "inapplicable" where defendant relied on a release containing an attorney's fee provision to defeat a tort claim because the "assertion of the affirmative defense of release" did not qualify as "an action brought to enforce the release"]; *Exxess Electronixx v. Heger Realty Corp.* (1998) 64 Cal.App.4th 698, 712 & fn. 15 ["By asserting a defense . . ., [defendant] did not bring an action or proceeding to enforce the [contract] or to declare rights under it"] and *Windsor Pacific LLC v. Samwood Co., Inc.* (2013) 213

14

Cal.App.4th 263, 266 [the term "'any action . . . to enforce . . . a contract' applies not only where the plaintiff's allegations in the complaint seek to enforce or interpret the contract, but also where the defendant seeks to do so by asserting an affirmative defense raised in its answer"].)  This issue is currently under review in the California Supreme Court.  (See *Mountain Air Enterprises, LLC v. Sundowner Towers, LLC*, Case No. S223536.)[3]

### C. The Trial Court Erred in Denying Monster's Request for a Jury Trial on Beats's Contract Damages

In the trial court, Beats did not seek to recover its attorney's fees as the prevailing party on Monster's fraud claims. Instead, Beats sought to recover those fees as damages on its cross-claims for breach of contract, and argued that section 1717 required the court, rather than a jury, to determine the amount

---

[3]      The Court's statement of pending issues (available at <http://www.courts.ca.gov/documents/JUN0917civpend.pdf >, (as of June 15, 2017)) indicates that *Mountain Air Enterprises* presents "the following issues: (1) Does the assertion of an agreement as an affirmative defense implicate the attorney fee provision in that agreement? (2) Does the term 'action' or 'proceeding' in Civil Code section 1717 and in attorney fee provisions encompass the assertion of an affirmative defense?" These questions, which essentially address whether contractual attorney's fees are recoverable as costs when a party successfully asserts an agreement as an affirmative defense to noncontract claims, are not relevant to the issue in this writ proceeding, which is whether section 1717 authorizes the court, rather than the jury, to set the amount attorney's fees that are sought as damages on a breach of contract claim.

15

of those fees.[4]  The trial court agreed, and ordered that the amount of attorney's fees Beats was entitled to recover on its

**4**     In its trial court briefing, Beats acknowledged that the specific issue presented to the court was "whether Beats' claims for attorneys' fees and costs based on its cross-claims should be resolved by a motion to the Court or by a jury trial."  Beats's briefing did not address whether it could recover such fees based on its status as the prevailing party on Monster's fraud claims. In its return to our order to show cause, however, Beats claims that during the trial court proceedings, it requested its attorney's fees as both "damages for its cross-claims" and "as a prevailing party."  To the extent Beats is now contending it sought to recover its fees as the "prevailing party" on Monster's fraud claims, that assertion finds no support in the record.  The hearing transcripts and Beats's own briefing demonstrate that the question presented to the trial court was whether the attorney's fees Beats had alleged as damages on its cross-claims could be resolved "by a noticed motion," rather than by a jury trial. Alternatively, to the extent Beats is now asserting it sought, or is otherwise entitled to, attorney's fees based on its status as the "prevailing party" on its breach of contract claims against Monster (a position Beats appeared to take at oral argument), the record shows that those contract claims have not yet been resolved because there has been no determination of damages, a necessary element of the claims.  (See *Professional Collection Consultants v. Lauron* (2017) 8 Cal.App.5th 958, 968 (*Lauron*) [elements of a breach of contract claim include damages resulting from the breach].)  Indeed, the very issue presented in this writ proceeding is whether section 1717 authorized the trial court to assess attorney's fees that Beats had pleaded as the damages resulting from Monster's breach of the relevant contracts. Because there has been no determination of damages, Beats has not prevailed on those claims.  (See *Hsu v. Abbara* (1995) 9 Cal.4th 863, 876 (*Hsu*) [prevailing party determination cannot be

16

breach of contract claims would be "heard by way of a noticed motion resolved by the court." Accordingly, the issue presented in this writ proceeding is not whether section 1717 (or any other provision) would allow Beats to recover its attorney's fees as the prevailing party on Monster's fraud claims, but rather whether the trial court was authorized to act as the trier of fact in determining the amount of fees Beats was entitled to recover as damages on its breach of contract claims.

Beats does not dispute that the right to a jury trial generally exists in breach of contract actions, and that this right extends to the assessment of damages. Beats contends, however, that section 1717 effectively withdraws that jury right when the damages sought on a breach of contract claim consist of attorney's fees. According to Beats, under such circumstances, section 1717 requires the court, rather than a jury, to determine the amount of attorney's resulting from the breach.

Our courts have consistently "distinguish[ed] between" attorney's fees that are sought as "an allowance . . . to the prevailing party as an incident to the principal cause of action," and those that are sought as "part of the cause of action." (*Mabee v. Nurseryland Garden Centers, Inc.* (1979) 88 Cal.App.3d 420, 425 (*Mabee*), superseded by statute on another ground as stated in *Stanisas, supra,* 17 Cal.4th at p. 629.) When sought by the "prevailing party . . . as an incident to the judgment" (*ibid*.), attorney's fees may be "properly awarded [as a form of cost] after entry of a . . . judgment." (*Khavarian Enterprises, Inc. v. Commline, Inc*. (2013) 216 Cal.App.4th 310, 326 (*Khavarian*).) However, when "fees are part of the relief sought[, they] must be

made until there has been a "final resolution of the contract claims"].)

17

pleaded and proved at trial." (*Id*. at p. 327.)  As explained by our Supreme Court:  "'[W]here attorney fees are . . . sought in a proceeding as damages . . ., then the claim for attorney fees is part of the damage sought in the principal action. . . .  [I]n such circumstances . . . the attorney fee [would] be required to be pleaded and proven -- as any other item of damages -- at trial.  No similar procedural and evidentiary base is required where 'the attorney fee was not the cause of action but an incident to it.' [Citation.]"  (*Folsom v. Butte County Assn. of Governments* (1982) 32 Cal.3d 668, 679, fn. 16 (*Folsom*) [citing and quoting *Mabee, supra,* 88 Cal.App.3d at p. 425].)

In *Brandt v. Superior Court* (1985) 37 Cal.3d 813 (*Brandt*), the Court applied this distinction in the context of a tort action alleging that an insurer had acted in bad faith when it denied coverage for an injury.  *Brandt* held that a plaintiff in a bad faith insurance claim is entitled to recover attorney's fees that were "reasonably incurred to compel payment of the policy benefits . . . as an element of the damages." (*Id*. at p. 815.)  The Court further held that "[s]ince the attorney's fees are recoverable as damages, the determination of the recoverable fees must be made by the trier of fact unless the parties stipulate otherwise." (*Id*. at p. 819.)  The Court explained that "[a] stipulation for a postjudgment allocation and award by the trial court would normally be preferable since the determination then would be made after completion of the legal services [citation], and proof that otherwise would have been presented to the jury could be simplified because of the court's expertise in evaluating legal services.  [Citations.]  If, however, the matter is to be presented to the jury, the court should instruct along the following lines:  'If you find (1) that the plaintiff is entitled to

18

recover on his cause of action for breach of the implied covenant of good faith and fair dealing, and (2) that because of such breach it was reasonably necessary for the plaintiff to employ the services of an attorney to collect the benefits due under the policy, then and only then is the plaintiff entitled to an award for attorney's fees incurred to obtain the policy benefits, which award must not include attorney's fees incurred to recover any other portion of the verdict." (*Id.* at pp. 819-820.)

Numerous other cases decided both before and after *Brandt* have likewise recognized that "[a]lthough fee issues are usually addressed to the trial court in the form of a posttrial motion, fees as damages are pleaded and proved by the party claiming them and are decided by the jury unless the parties stipulate to a posttrial procedure." (*Sumner Hill Homeowners' Assn., Inc. v. Rio Mesa Holdings, LLC* (2012) 205 Cal.App.4th 999, 1035, fn. 50; see also *Folsom, supra,* 32 Cal.3d at p. 677; *Khavarian, supra,* 216 Cal.App.4th at p. 327; *Vacco Industries, Inc. v. Van Den Berg* (1992) 5 Cal.App.4th 34, 56; *No Oil, Inc. v. City of Los Angeles* (1984) 153 Cal.App.3d 998, 1005-1006; *Mabee, supra*, 88 Cal.App.3d at p. 425.)

Beats contends, however, that although the above cases show there is generally a right to a jury trial when attorney's fees are sought as damages, section 1717 imposes a different rule in breach of contract actions that seek attorney's fees as damages. According to Beats, under those circumstances, section 1717 requires that the amount of the fees "be determined by the court," rather than a jury.

This argument finds no support in the text of section 1717. As summarized above, the statute provides that "[t]he party who is determined to be the party prevailing on the contract . . . shall

be entitled to reasonable attorney's fees, which shall be fixed by the court as an element of costs." The statute further states that "upon notice and motion by a party," the court "shall determine who is the party prevailing on the contract," which is defined as "the party who recovered a greater relief in the action on the contract." Our Supreme Court has held that under section 1717, "the prevailing party determination is to be made only upon final resolution of the contract claims, and only by 'a comparison of the extent to which each party ha[s] succeeded and failed to succeed in its contentions.'" [Citation.]" (*Hsu, supra,* 9 Cal.4th at p. 876; see also *Poseidon Development, Inc. v. Woodland Lane Estates, LLC* (2007) 152 Cal.App.4th 1106, 1120 [prevailing party determination "must await final resolution of the matter"].) The determination involves "'an inquiry separate from the decision on the merits - an inquiry that cannot even commence until one party has "prevailed."'" [Citation.]" (*Folsom, supra,* 32 Cal.3d at p. 677 [discussing prior version of section 1717] [quoting *White v. New Hampshire Dept. of Empl. Sec.* (1982) 455 U.S. 445, 451, which interpreted a federal law awarding "attorney's fees to a 'prevailing party'"].)

Thus, under section 1717, a party cannot move for fees, nor can the court fix the amount of those fees, until the breach of contract claim has been resolved. (See *In re Estate of Drummond* (2007) 149 Cal.App.4th 46, 51 ["[T]he prevailing party determination must await 'the final resolution of the contract claims.' It necessarily follows that no fee award can be made before such a 'final resolution'"].) Once the claim is resolved and a party has submitted a motion, the court is then permitted to: (1) determine whether the moving party prevailed on the contract claim; (2) fix the amount of fees incurred to resolve the claim; and

20

(3) award those fees as costs. The statute contains no language requiring (or even permitting) the court to assess attorney's fees that are sought as damages, an element that must be proved to prevail on the merits of a contract claim. (See *Bramalea California, Inc. v. Reliable Interiors, Inc.* (2004) 119 Cal.App.4th 468, 473 ["[a] breach of contract is not actionable without damage"]; *Lauron, supra,* 8 Cal.App.5th at p. 968 ["breach of contract is comprised of the following elements: . . . . (4) the resulting damages to plaintiff"].) Indeed, the Supreme Court's determination that a trial court has no authority to fix attorney's fees under section 1717 until the contract claim has been resolved compels us to conclude the statute does not authorize the court to fix fees sought as damages. If Beats ultimately prevails on its breach of contract claims, section 1717 would allow it to move for attorney's fees that it incurred in litigating those claims, but the statute has no application to the fees Beats has sought as damages on its contract claims, which must be "proven -- as any other item of damages -- at trial." (*Folsom, supra,* 32 Cal.3d at p. 679, fn. 16.)[5]

---

[5] In the trial court, Beats argued it would be "impractical[]" to allow a jury to assess attorney's fees, explaining: "If the court were to proceed as Plaintiffs propose, there would be a jury trial on the amount of Beats' attorneys fees. But the amount of fees that Beats is entitled to in connection with time spent at trial and posttrial would not be accounted for. The issue of the amount of attorneys fees can only be finally determined by the Court, not a series of jury trials." This argument conflates two categories of attorney's fees related to Beats's contract claims: the fees Beats incurred in defending itself against Monster's fraud claims, and the fees Beats has incurred (and will continue to incur) in litigating its breach of contract claims against Monster.

21

Beats's assertion that section 1717 requires the court, rather than a jury, to fix attorney's fees sought as damages in a breach of contract action also raises serious constitutional problems.  As explained above, the California Constitution affords civil litigants the right to a jury trial in suits seeking to recover damages for breach of contract.  (*Raedeke, supra,* 10 Cal.3d at p. 671.)  This jury right extends to questions of fact, which includes the "assessment of damages." (*Dorsey*, *supra*, 38 Cal.2d at p. 356.)  Under Beats's interpretation of section 1717, the statute acts to eliminate that jury right when the damages sought in a breach of contract action consists of attorney's fees.  A statute, however, cannot override a constitutional requirement, and is "invalid to the extent of the conflict." (*Jacob B. v. County of Shasta* (2007) 40 Cal.4th 948, 961; see also *Strauss v. Horton* (2009) 46 Cal.4th 364, 395, ["A California statute, of course, is invalid if it conflicts with the governing provisions of the California Constitution"] [abrogated on other grounds by *Obergefell v. Hodges* (2015) 135 S. Ct. 2584].)  Given that the California Constitution provides litigants the right to have a jury determine damages in a breach of contact action, interpreting section 1717 in a manner that would withdraw that right in a subset of contract cases would raise serious doubts as to its constitutional validity.  When possible, we must "construe statutes in a manner which avoids constitutional difficulties." (*Welfare Rights Organization v. Crisan* (1983) 33 Cal.3d 766, 772;

Monster's writ petition only seeks a jury trial on the first category of attorney's fees, which constitute the damages Beats has alleged in relation to its breach of contract claim.  Monster has not sought a jury trial on the second category of fees, which cannot be fixed until after the contract claim is resolved.

*People v. Smith* (1983) 34 Cal.3d 251, 259 ["if reasonably possible the courts must construe a statute to avoid doubts as to its constitutionality"]; *City of Huntington Park v. Superior Court* (1995) 34 Cal.App.4th 1293, 1299 [courts "have an obligation to construe a statute in such a way as to avoid any doubt of its validity under the constitution"].) Applying that principle here, to the extent section 1717 can be reasonably interpreted in the manner Beats proposes, we reject that reading to avoid the difficult constitutional questions it would raise.[6]

---

[6]     Beats also appears to contend that Code of Civil Procedure section 1033.5 requires the court, rather than a jury, to assess attorney's fees that are sought as damages on a breach of contract action. Section 1033.5, however, merely lists the items that the prevailing party in a civil action is entitled to recover "as costs." (See Code of Civil. Proc., §§ 1033.5, subd. (a), 1032, subd. (b).) The statute includes "attorney's fees" that are "authorized by" "Contract" as a recoverable cost, and directs that such fees "may be fixed . . . upon a noticed motion." (See Code of Civil. Proc., § 1033.5, subds. (a)(10)(A) & (c)(5)(A).) The term "costs," however, refers to "'allowances [that] are authorized to reimburse the successful party to an action or proceeding and are in the nature of incidental damages to indemnify a party against the expense of successfully asserting his rights." [Citation.]' [Citation.]" (*Folsom, supra*, 32 Cal.3d at p. 677 [citing and quoting *Rappenecker v. Sea-Land Service, Inc.* (1979) 93 Cal.App.3d 258, 264].) "[C]osts 'are allowed solely as an incident of the judgment given upon the issues in the action. [Citation.] . . . They constitute no part of a judgment . . .' [Citations]." (*Folsom, supra*, 32 Cal.3d at p. 677.) Thus, as with section 1717, section 1033.5 only applies once a party has prevailed on a claim, and relates only to attorney's fees incurred as costs. It has no application to attorney's fees that are sought as damages.

In sum, Monster has a right to have a jury determine the amount of attorney's fees resulting from its alleged breach of the Termination Agreement and the 2013 Unit Repurchase Agreement. Nothing in section 1717 withdraws that right. If Beats preferred to have its attorney's fees fixed by way of a noticed motion, rather than by jury trial, it could have pursued a motion for fees under section 1717 (or Code of Civil Procedure section 1033.5, subdivision (c)(5)(A)) as the prevailing party on Monster's fraud claims. Beats, however, elected to seek its fees as damages on its cross-claims for breach of contract. Because "the fees are part of the relief sought[,] [they] must be pleaded and proved at trial . . . as any other item of damages." (*Folsom, supra*, 32 Cal.3d at p. 677, fn. 16.)[7]

---

[7] At oral argument, Beats's counsel asserted that two prior decisions, *Bankes v. Lucas* (1992) 9 Cal.App.4th 365 (*Bankes*) and *Lanyi v. Goldblum* (1986) 177 Cal.App.3d 181 (*Lanyi*), held that when attorney's fees are sought as damages resulting from the breach of a contract, section 1717 allows the court, rather than the jury, to assess the amount of those fees. Neither case, however, addressed that specific issue. In *Bankes,* the court considered whether "the filing of a notice of appeal . . . deprive[s] the trial court of jurisdiction to award attorney fees as costs post trial," and whether the respondents' motion for attorney's fees had been filed a in a timely manner. (See *Bankes, supra*, 9 Cal.App.4th at pp. 368-369.) The decision contains no language suggesting that section 1717 requires the trial court, rather than a jury, to determine attorney's fees sought as damages resulting from a breach of contract. Indeed, *Bankes* specifically clarifies that section 1717 applies when a prevailing party seeks attorney's fees as a form of costs following the resolution of a contract claim.

In *Lanyi, supra,* 177 Cal.App.3d 181, the court held that "attorney fees authorized by section 1717 are available to a party who prevails by a [Code of Civil Procedure] section 998 compromise settlement that is silent as to costs and fees." (*Id.* at

**DISPOSITION**

Let a peremptory writ of mandate issue commanding the superior court to: (1) vacate its order directing that the attorney's fees Beats seeks as damages on its cross-claims for breach of contract are to be fixed through a noticed motion; and (2) issue a new order directing that Monster and Lee are entitled to a jury trial to determine the amount of those attorney's fees. The temporary stay order is vacated. Petitioners shall recover their costs for this proceeding.

ZELON, Acting P. J.

We concur:

SEGAL, J.                    SMALL, J.*

---

p. 187.) As in *Bankes*, the *Lanyi* court explained that section 1717 enables the prevailing party in an action on a contract with an attorney's fees provision to recover his or her fees as a form of costs "after entry of a . . . judgment." (*Ibid*.) The court further explained that section 1717 contains no language barring the award of fees as a form of costs merely because the "judgment[]" resulted from "a section 998 settlement." (*Id*. at pp. 189-191.) In its analysis, *Lanyi* specifically distinguished between attorney's fees sought as costs after judgment, which may be obtained through a noticed motion under section 1717, and "'[t]hose situations where fees are part of the relief sought and hence must be pleaded and proved at trial. [Citation.]'" (*Id*. at p. 187, fn. 5.)

*        Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

25