Filed 1/3/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| ROBERT A. BROWN et al., | B281704 |
| Plaintiffs and Appellants, | |
| v. | (Los Angeles County Super. Ct. No. BC289546) |
| STEWART MORTENSEN, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, John Shepard Wiley, Jr., Judge.  Reversed.

Law Offices of Lyle F. Middleton, Lyle F. Middleton; Law Office of Robert A. Brown, and Robert A. Brown for Plaintiffs and Appellants.

Carlson & Messer, Charles R. Messer, David J. Kaminski and Stephen A. Watkins for Defendant and Respondent.

———————————————

This case resolves two obscure and previously unaddressed state constitutional issues: Does article I, section 16 of the California Constitution guarantee the right to a jury trial for (1) nominal statutory damages claims, and/or (2) claims for attorneys' fees, under the Confidentiality of Medical Information Act (CMIA) (Civ. Code, §§ 56 et seq.[1])?

With little useful guidance from the parties, no controlling precedent, and the three-year postremittitur deadline for bringing the case to trial about to expire,[2] the experienced and highly regarded trial judge concluded it does neither. With more time to reflect, further development of case law, and some modest additional input from the parties, however, we reach a different conclusion. We hold that jury trial is guaranteed for CMIA's nominal statutory damages claims brought before 2013 under section 56.36, subdivision (b)(1), but not for attorneys' fees claims under section 56.35. We therefore reverse the trial court's judgment (which was entered after a bench trial) and remand for jury trial on both the nominal statutory damages claims and a remaining compensatory damages claim. The attorneys' fee claim should be addressed, if at all, by the court via posttrial motion.

## BACKGROUND

Plaintiffs and appellants, Robert A. Brown ("Brown"), and his two then-minor daughters, Kirsten Brown and Kayla Brown

---

[1] All further statutory references are to the Civil Code unless otherwise indicated.

[2] Code of Civil Procedure section 583.320, subdivision (a)(3).

(collectively, "the Browns"), were patients of a dentist named Dr. Rolf Reinholds. In July 2000, Dr. Reinholds billed Brown $600 in connection with a dental crown. After Brown paid only a portion of the bill, Reinholds referred the debt to a collection agency called Credit Bureau Services, owned by defendant and respondent Stewart Mortensen.

The Browns brought suit in 2003, contending an employee of Mortensen transmitted confidential medical (i.e., dental) information received from Dr. Reinholds to the three major national consumer credit reporting agencies, Experian, Equifax, and Trans Union, in violation of the CMIA.[3]

After significant delays, including delays resulting from interlocutory appellate review,[4] the Browns finally brought their

---

[3] The Browns originally sued both Dr. Reinholds and Mortensen, but dismissed the dentist after he became terminally ill and closed his practice.

[4] The first appeal arose after the trial court sustained a demurrer to the Browns' fourth amended complaint on the grounds that it was impermissibly vague and that the Browns' CMIA claims were preempted by Fair Credit Reporting Act. When the Browns elected not to amend, the trial court dismissed the case. On appeal, a different panel of this division rejected the vagueness conclusion, but agreed with respect to preemption. The Supreme Court reversed, holding the claims were not preempted. (See *Brown v. Mortensen* (2011) 51 Cal.4th 1052.) On remand from the Supreme Court, in an unpublished opinion, a different panel of this division reasserted its conclusion on vagueness, acknowledged the Supreme Court's decision, and remanded. In a second appeal resulting in a 2014 unpublished opinion, a different panel of this division affirmed the trial court's later order that the Browns were unsuitable class

case to trial in late 2016.[5]  The Browns had requested a jury and the parties prepared jury instructions.  At some point, however, a question arose concerning whether the Browns had a right to a jury trial on all of their claims.  At a pretrial conference, the trial judge expressed a preliminary view that the Browns' nominal statutory damages claims are equitable and that at least part of the case should be tried to the court rather than the jury.  He proposed that he reserve decision on the jury trial issue, and the parties try the case (which was expected to take only about a day) to the court without waiver of the Browns' position that all the issues should be tried to a jury.  Brown, who is an attorney, and who was representing himself and his daughters, agreed, as did Mortenson's counsel.  The parties then tried their case to the court.

The CMIA " 'is intended to protect the confidentiality of individually identifiable medical information obtained from a patient by a health care provider, while at the same time setting forth limited circumstances in which the release of such information to specified entities or individuals is permissible.' [Citations.]  [¶] . . . 'The basic scheme of the [CMIA] . . . is that a provider of health care must not disclose medical information without a written authorization from a patient.' [Citation.]" (*Brown v. Mortensen* (2011) 51 Cal. 4th 1052, 1070.)

representatives, but reversed the order to the extent it disqualified class counsel, precluded discovery and prevented amendment to name new class representatives.

[5] The scant record provided to us does not reveal what became of the class allegations, but the case did not go to trial as a class action.

4

Section 56.10, subdivision (a) states that "a provider of health care . . . shall not disclose medical information regarding a patient . . . without first obtaining" a written authorization required by the statute.  And a "recipient of medical information pursuant to an authorization . . . may not further disclose that medical information except in accordance with a new authorization" that meets the statutory requirements, or as otherwise specifically required or permitted by law.  (§56.13.)

At trial, the Browns' theory was that Dr. Reinholds disclosed their confidential medical information to Mortensen without the written authorization required by statute, in violation of  section 56.10, subdivision (a), and that Mortensen disclosed this information to the credit bureaus, also without their authorization, in violation of section 56.13.[6]

After a brief bench trial, the trial judge issued final rulings, and entered judgment in favor of Mortensen.  The trial court ruled "there is no right to a jury trial on the equitable issues in the case," and identified the equitable issues as the Browns' claim for nominal statutory damages of $1,000 per person (i.e., $1,000 each for Robert, Kayla, and Kristen Brown) under section 56.36, subdivision (b)(2), and their claim for statutory attorneys' fees of

---

[6] As noted in the text, section 56.13 prohibits a "recipient of medical information *pursuant to an authorization*" from re-disclosing that information without an appropriate authorization.  (Italics added.)  At trial, the Browns contended, however, that Mortensen did *not* receive the information "pursuant to an authorization."  If so, section 56.13 does not, by its terms,  seem to apply.  The parties did not raise the issue at trial, however, and do not address it in their briefing.  It may be addressed on remand via an appropriate dispositive motion.

up to $1,000 per person under section 56.35. The trial court ruled that the remaining claim, i.e., Brown's claim for compensatory damages for emotional distress under section 56.36, subdivision (b)(2), was not equitable.

The trial court further ruled it had held a bench trial on the equitable issues. It characterized the "central factual dispute at trial" as whether Mortensen's company had sent an "itemized statement" to Equifax, Experian, and Trans Union containing the Browns' confidential medical information. Resolution of that issue, the trial court noted, boiled down to a credibility determination. Mortensen's employee testified the itemized statement had never been sent. Brown testified it had. The trial court found the employee's denial credible, and Brown's testimony not credible, for a number of reasons detailed in the ruling. Ultimately, the trial court rejected all of Brown's testimony as unreliable. It concluded, therefore, that the Browns' claim that Mortensen transmitted their confidential medical information to the credit bureaus "fails for want of proof." The trial court concluded: "the sole wrongdoer is Brown, who owed but did not pay a $600 debt. The sole victims were Reinholds, who died an unpaid creditor, and Mortensen, whose legitimate collection effort Brown foiled entirely."

Finally, the trial court noted Brown would have had a right to a jury trial on his claim for emotional distress damages. It ruled, however, that its finding that Mortensen had not transmitted confidential medical information to the credit bureaus disposed of Brown's remaining claim, rendering a jury trial unnecessary. Among other cases, the trial court cited in support of this proposition *DiPirro v. Bondo Corp.* (2007) 153 Cal.App.4th 150,185 (*DiPirro*) ("Where a 'mixed bag' of legal and

6

equitable claims is presented in a case, a court trial of the equitable claims first may obviate the necessity of a jury trial on the legal claims, but otherwise the plaintiff cannot be denied the right to a jury trial on the legal causes of action. [Citations.] If 'there are equitable and legal remedies sought in the same action, the parties are entitled to have a jury determine the legal issues unless the trial court's initial determination of the equitable issues is also dispositive of the legal issues, leaving nothing to be tried by a jury.' ")[7]

---

[7] The Browns contend that our Supreme Court, in *Shaw v. Superior Court* (2017) 2 Cal.5th 983 (*Shaw*), overturned the well-established rule that "when both legal and equitable claims are at issue, a trial court has discretion to rule first on the equitable claim; this may obviate a jury trial of the legal claim if the trial court's ruling is dispositive of an issue crucial to the legal claim." (*Id.,* p. 1006.) We reject this contention as a gross misreading of *Shaw*. *Shaw* held there is no statutory right to a jury trial on a cause of action for retaliatory termination under the statutorily created civil action authorized under Health and Safety Code section 1278.5, subdivision (g). But, *Shaw* also held that statute does not deprive a terminated employee of a right to a jury trial because Health and Safety Code section 1278.5, subdivision (m) "fully preserves a plaintiff's right to obtain a jury trial in the related tort cause of action for wrongful termination in violation of public policy authorized under *Tameny v. Atlantic Richfield Co.* (1980) 27 Cal.3d 167 [164 Cal.Rptr. 839, 610 P.2d 1330]." (*Shaw, supra*, 2 Cal.5th at p. 987.) We decline to address the argument further because it was raised for the first time in the Browns' reply brief, and for reasons of fairness we generally do not consider such arguments. (*Marriage of Khera & Sameer* (2012) 206 Cal.App.4th 1464, 1477.)

## STANDARD OF REVIEW

"[W]hether [a party is] constitutionally entitled to a jury trial . . . is a pure question of law that we review de novo." (*Caira v. Offner* (2005) 126 Cal.App.4th 12, 23; *DiPirro, supra*, 153 Cal.App.4th at p. 179). Unwarranted denial of the right to a jury trial is in excess of the trial court's jurisdiction and constitutes reversible error per se. (*Valley Crest Landscape Development, Inc. v. Mission Pools of Escondido, Inc*. (2015) 238 Cal.App.4th 468, 493.)

## DISCUSSION

*1. The jury trial right under California law.*

In *Shaw*, our Supreme Court recently summarized state law governing the jury trial right as follows: "Under California law, the right to a jury trial in a civil action may be afforded either by statute or by the California Constitution. . . . [¶] As a general matter, the California Legislature has authority to grant the parties in a civil action the right to a jury trial by statute, either when the Legislature establishes a new cause of action or with respect to a cause of action that rests on the common law or a constitutional provision. [Citations.] Given the Legislature's broad general legislative authority under the California Constitution and in the absence of any constitutional prohibition [citations], the Legislature may extend the right to a jury trial to instances in which the state constitutional jury trial provision does not itself mandate a right to a jury trial.

"In instances in which the language and legislative history of a statute creating a civil cause of action do not indicate whether the Legislature intended that the action is to be tried by a jury or by the court, the question whether there is a right to a

8

jury trial is generally determined by application of the state constitutional jury trial provision, now embodied in article I, section 16 of the California Constitution.  [Citation.]  But even when the language and legislative history of a statute indicate that the Legislature intended that a cause of action established by the statute is to be tried by the court rather than by a jury, if the California constitutional jury trial provision itself guarantees a right to a jury trial in such a cause of action, the Constitution prevails and a jury trial cannot be denied.  [Citations.]

"Article I, section 16 of the California Constitution declares broadly that '[t]rial by jury is an inviolate right and shall be secured to all . . . .'  Notwithstanding the breadth of this declaration, past California cases make clear 'that the state constitutional right to a jury trial "is the right as it existed at common law in 1850, when the [California] Constitution was first adopted." '  [Citations.]

"In *C & K Engineering* [(1978)] 23 Cal.3d at pages] 8−9, we noted:  'As a general proposition, "[T]he jury trial is a matter of right in a civil action at law, but not in equity.'  [Citations.] [¶] As we stated in *People v. One 1941 Chevrolet Coupe*, [(1951) 37 Cal.2d 283, 2 (*One 1941 Chevrolet*)], " ' If the action has to deal with ordinary common-law rights cognizable in courts of law, it is to that extent an action at law.  In determining whether the action was one triable by a jury at common law, the court is not bound by the form of the action but rather by the nature of the rights involved and the facts of the particular case−the *gist* of the action.  A jury trial must be granted where the *gist* of the action is legal, where the action is in reality cognizable at law.' "  [Citation.]  On the other hand, if the action is essentially one in equity and the relief sought "depends upon the application of

9

equitable doctrines," the parties are not entitled to a jury trial. [Citations.]  Although we have said that "the legal or equitable nature of a cause of action ordinarily is determined by the mode of relief to be afforded" [citation], the prayer for relief in a particular case is not conclusive [citations].  Thus, "The fact that damages is one of a full range of possible remedies does not guarantee . . . the right to a jury . . . ." [Citation.]' " (*Shaw*, *supra*, 2 Cal.5th 983, 993−995, fns. omitted.)

As the trial judge pointed out, the CMIA was enacted to protect patient privacy.  The right to privacy did not exist in the common law of 1850.  Rather, the right to privacy can be traced back to the well-known Warren and Brandeis article of 1890. (Warren & Brandeis, *The Right to Privacy* (1890) 4 Harvard L. Rev. 193.)

That the Legislature enacted the CMIA well after the adoption of the Constitution, and that it creates rights unknown at that time, does not control the right to a jury trial, however. "The constitutional right of trial by jury is not to be narrowly construed.  It is not limited strictly to those cases in which it existed before adoption of the Constitution but is extended to cases of like nature as may afterwards arise." (*One 1941 Chevrolet*, *supra*, 37 Cal.2d at p. 300.)  In other words, we must look for analogies, to determine whether similar actions were cognizable at common law in 1850.

The Browns do not contend the language or legislative history of the CMIA grant them a jury trial right.[8]  Instead, they

---

[8] Although the parties do not mention it in their briefing, the current version of the statute indicates that in some cases actions for actual damages under section 56.36, subdivision (b)

10

assert the state constitution guarantees them a right to a jury trial on all of their claims. The parties agree that (absent the trial court's factual findings) Robert Brown would be entitled to a jury trial on his compensatory damages claim for emotional distress. We therefore must decide whether it was error for the trial court to try first, without a jury, the Browns' claims for nominal statutory damages and/or their section 56.35 claims for attorneys' fees. We turn next to that inquiry.

> 2. *The Browns were entitled to a jury trial of their section 56.36, subdivision (b)(1) claims for nominal statutory damages.*

Section 56.36 currently provides, in relevant part:

"(b) In addition to any other remedies available at law, an individual may bring an action against a person or entity who has negligently released confidential information or records concerning him or her in violation of this part, for either or both of the following:

---

brought on or after January 1, 2013 will be tried to *the court*, rather than a jury. (See § 56.36, subdivision (e)(1) ["In an action brought by an individual pursuant to subdivision (b) on or after January 1, 2013, in which the defendant establishes the affirmative defense in paragraph (2), *the court* shall award any actual damages and reasonable attorney's fees and costs, but shall not award nominal damages for violation of this part."].) The affirmative defense referred to in the statute requires consideration of a number of equitable factors. These provisions are inapplicable to this case, however, because the Browns brought their suit well before 2013. Moreover, all of the statutory language referred to in this footnote was added to the statute well after the Browns brought their lawsuit.

11

"(1) Except as provided in subdivision (e), nominal damages of one thousand dollars ($1,000). In order to recover under this paragraph, it is not necessary that the plaintiff suffered or was threatened with actual damages.

"(2) The amount of actual damages, if any, sustained by the patient."

The statute is silent about why the Legislature chose to allow statutory damages of $1,000 without proof of injury, and the parties have not directed us to anything in the legislative history to illuminate the issue. Provisions such as this, however, generally serve as penalties to discourage noncompliance, and as liquidated damages that facilitate and encourage private enforcement of the statute by eliminating the difficult and sometimes expensive task of proving actual damages (such as emotional distress) caused by violation of the act's privacy provisions.

"Determining whether the gist of a claim is in law or equity 'depends in large measure upon the mode of relief to be afforded.' [Citation.] Generally, an action for damages is legal in nature." (*Mendoza v. Ruesga* (2008) 169 Cal.App.4th 270, 283.) Here, we are confronted with the question of whether *noncompensatory* nominal statutory damages are legal in nature. Unfortunately, no party addressed this dispositive question directly, either in the trial court or on appeal.

The Browns, seizing on the statute's reference in paragraph (b) to "negligently" releasing confidential information, argue that the gist of their action is legal because it is like an ordinary action for negligence, or negligence per se. Actions of that type were tried in courts of law before the adoption of our state

12

Constitution in 1850.  The analogy is not apt, however, because actual damages are an element of negligence and negligence per se claims.  Here, the nominal statutory damages are awarded without proof of actual damages or threat of injury.  And in any event, the Browns did not allege negligence or negligence per se in their operative complaint.

As noted above, nominal statutory damages serve as a penalty, and actions to recover a penalty *were* available at common law before 1850.  In *Grossblatt v. Wright* (1951) 108 Cal.App.2d 475, a different division of this court considered whether a jury trial right existed under rent control provisions of the Housing and Rent Act of 1947, which permitted tenants or prospective tenants to recover "liquidated damages" of either $50 or three times the amount by which the rent charged by a landlord, or proposed to be charged by a prospective landlord, exceeded the maximum allowable rent.  The court characterized these damages provisions–particularly the treble damages provision–as penalties, and concluded the gist of an action to recover these penalties was legal rather than equitable.  "The action (writ) of debt was the general remedy at common law for the recovery of all sums certain, or sums readily reducible to a certainty, whether the legal liability arose from contract or was created by statute.  Statutory penalties existed at common law, and debt was the appropriate action for the recovery thereof where no other remedy was specified, because the money due under such statute gave rise to a debt, the underlying theory being an implied promise which the law annexed to the liability." (*Grossblatt* at pp. 484−485; *see also id.* at fn. 18, collecting additional authorities.)  "A jury trial was a matter of right in the common-law action of debt, and consequently it exists in all civil

13

actions under modern practice which formerly would have fallen within this form of action." (*Id.* at p. 486.)[9]

Thus, because the gist of their action was legal, the Browns had a constitutional right to have their claims for nominal statutory damages tried to a jury. They therefore are entitled to reversal and remand for a jury trial.[10]

> 3. *The Browns were not entitled to a jury trial for their section 56.35 claims for attorneys' fees; if the plaintiff prevails, any such fee awards should be decided by the court on posttrial motion.*

Section 56.35 provides: "In addition to any other remedies available at law, a patient whose medical information has been used or disclosed in violation of Section 56.10 or 56.104 or 56.20

---

[9] (Cf. *One 1941 Chevrolet, supra,* 37 Cal.2d at p. 295 & fn. 15 [noting cases involving penalties to the Crown were tried to a jury in the Court of Exchequer]; see also *Tull v. United States* (1987) 481 U.S. 412, 422 [explaining as a matter of historical fact that a government suit to collect a "civil penalty was a type of remedy at common law that could only be enforced in courts of law. Remedies intended to punish culpable individuals, as opposed to those intended simply to extract compensation or restore the status quo, were issued by courts of law, not courts of equity."].) We recognize, of course, that collection of penalties by the government differs from collection of penalties by private parties.

[10] The parties have not briefed the relationship between compensatory damages claims under section 56.36, subdivision (b), which are available "against a person or entity who has *negligently* released confidential information," and section 56.35, which does not mention negligence. We do not need to explore that subject to resolve the issues before us.

14

or subdivision (a) of Section 56.26 and who has sustained economic loss or personal injury therefrom may recover compensatory damages, punitive damages not to exceed three thousand dollars ($3,000), attorneys' fees not to exceed one thousand dollars ($1,000), and the costs of litigation."

"Our courts have consistently 'distinguish[ed] between' attorney's fees that are sought as '[an] allowance . . . to the prevailing party as an incident to the principal cause of action,' and those that are sought as 'part of the cause of action.' [Citation.]  When sought by the 'prevailing party . . . as an incident to [the] judgment' [citation], attorney's fees may be 'properly awarded [as a form of cost] after entry of a . . . judgment.' [Citation.]  However, when 'fees are part of the relief sought[, they] must be pleaded and proved at trial.' [Citation.] As explained by our Supreme Court:  ' "[W]here attorney fees are . . . sought in a proceeding as damages . . . , then the claim for attorney fees is part of the damage sought in the principal action. . . .  [I]n such circumstances . . . the attorney fee [would] be required to be pleaded and proven–as any other item of damages–at trial.  No similar procedural and evidentiary base is required where 'the attorney fee was not the cause of action but an incident to it.' " [Citation.]' " (*Monster LLC v. Superior Court* (2017) 12 Cal.App.5th 1214, 1228 (*Monster LLC*).)

Attorneys' fees claims forming part of a damages claim must be decided by a jury if the right to a jury exists, because that right encompasses the right to have the jury try and determine issues of fact, including " 'the assessment of damages.' " (*Monster LLC, supra*, 12 Cal.App.5th at p. 1225.) Otherwise, they generally are decided on posttrial motion, along

15

with costs (which also are available under § 56.35). (*See Monster LLC* at p. 1229.)

We do not read the CMIA to incorporate attorneys' fees as an element of damages. Rather, it allows attorneys' fees up to $1,000 and costs to a prevailing plaintiff, as incidental relief. As is the usual practice, attorneys' fees are to be adjudicated in a posttrial motion. Thus, the attorneys' fee provision does not carry with it a right to a jury trial, and it also does not afford an opportunity to a trial court to make factual determinations that would bind a jury.

We note, however, that attorneys' fees under section 56.35 are available only upon proof of economic loss or personal injury, and thus would be unavailable to plaintiffs such as Kirsten Brown and Kayla Brown, who seek recovery only of nominal statutory damages without proof of injury.

## DISPOSITION

The judgment is reversed.  The case is remanded for jury trial on the Browns' nominal statutory damages claim and Brown's compensatory damages claim and other proceedings consistent with this opinion.  If Brown prevails on his compensatory damages claim, his claim for attorneys' fees should be resolved in a posttrial motion.  The parties will bear their own costs on appeal.

CERTIFIED FOR PUBLICATION.


CURREY, J.*

We concur:


ROTHSCHILD, P. J.              CHANEY, J.

---

* Associate Justice of the Court of Appeal, Second Appellate District, Division Four, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.