Filed 7/12/23  Monster v. Beats Electronics CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| MONSTER, LLC et al., <br><br> Plaintiffs, Cross-defendants and Appellants, <br><br> v. <br><br> BEATS ELECTRONICS, LLC, <br><br> Defendant, Cross-complainant and Respondent. | B312570 <br><br> (Los Angeles County Super. Ct. No. BC595235) |

APPEAL from an order of the Superior Court of Los Angeles County, William Fahey, Judge.  Affirmed.

Law Offices of Kirk M. Hallam and Kirk M. Hallam for Plaintiffs, Cross-defendants and Appellants Monster, LLC and Noel Lee.

Gibson, Dunn & Crutcher, Theodore J. Boutrous, Jr., Bradley J. Hamburger, Daniel R. Adler and Madeleine F. McKenna for Defendant, Cross-complainant and Respondent.

_____

Monster, LLC and Noel Lee, its chief executive officer, sued Beats Electronics, LLC, HTC America Holding, Inc. and Paul D. Wachter, a member of Beats's board, in January 2015 alleging Beats, assisted by HTC and Wachter, engaged in a fraudulent scheme to deprive Monster and Lee of their interest in Beats and revenue from its products.[1]  Beats cross-complained against Monster and Lee, alleging that by filing suit they had breached the release provisions in 2012 and 2013 agreements between the parties.  In July 2018 the trial court entered a second amended judgment in favor of Beats, HTC and Wachter after they prevailed on summary judgment motions directed to Monster and Lee's complaint; a jury returned a verdict awarding Beats damages on its cross-complaint; and the court granted Beats's requests for interest and attorney fees as the prevailing party on its cross-complaint.  We affirmed the judgment and postjudgment orders.  (*Monster, LLC v. Beats Electronics, LLC* (Aug. 25, 2020, B285994) [nonpub. opn.] (*Monster II*).)

After issuance of our remittitur, Beats moved in the trial court for additional fees and costs and application of Monster's cash deposit to satisfy the judgment.  Monster and Lee opposed Beats's motion and moved to amend the judgment by vacating

_____

[1]     The complaint also named the founders of Beats, Andre Young (popularly known as Dr. Dre) and Jimmy Iovine.  Early in the proceedings the court sustained demurrers by Young and Iovine without leave to amend, and they were dismissed from the case.

2

the award of damages, arguing our opinion affirming the judgment was not final with respect to Beats's cross-complaint. The trial court granted Beats's motion and denied Monster and Lee's.

On appeal Monster and Lee again contend our decision in *Monster II* did not finally resolve their liability on Beats's cross-complaint and argue the judgment as entered violated their right to due process and is void on its face. Monster and Lee also challenge the trial court's use of California, rather than Delaware, law to determine the amount of postjudgment interest owed to Beats. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *The Parties' Business Agreements*

The founders of Beats granted a license to Monster in January 2008 for the manufacture and sale of "Beats by Dre" headphones. (*Monster, LLC v. Superior Court* (2017) 12 Cal.App.5th 1214, 1219 (*Monster I*).) On August 20, 2009 Beats and Monster entered into an amended license and promotion agreement, which superseded the January 2008 agreement.

The 2009 agreement provided it would continue in effect until terminated. However, Beats was authorized to terminate the agreement upon the closing of a transaction that resulted in a "Change of Control." The parties' operating agreement defined that term to include "the acquisition after the date of this Agreement, directly or indirectly, by any Person or group . . . of the beneficial ownership of Units of [Beats] possessing more than 50% of the total combined voting power of all outstanding units of [Beats]." Upon termination Monster was required to transfer its ownership rights in the industrial designs of all Beats products to

3

Beats or its assignee and to grant Beats or its assignee a perpetual, royalty-free, worldwide nonexclusive license on all intellectual property necessary for the continued manufacture and sale of all Beats-branded products.

As part of the consideration for the 2009 license agreement, Beats granted Monster or its designee a 5 percent ownership interest in the company. Monster designated Lee, through his living trust, to receive the Beats ownership interest.[2] The separate agreement by which Lee acquired that interest gave Lee the right to require Beats to repurchase his shares upon termination of the 2009 license agreement. If termination occurred because of a change of control and Lee exercised his put right, he was to be paid "the amount and form of consideration paid to the other owners" in the change-of-control transaction.

In mid-2011 Beats agreed with a subsidiary of publicly traded HTC Corporation for HTC to purchase a 51 percent interest in Beats for $300 million. Following execution of the agreement with HTC, Beats notified Monster it was invoking the termination provision in the 2009 license agreement. The parties agreed to a June 30, 2012 termination date. Notwithstanding that effective date, however, the parties agreed that Monster would retain the right to act as Beats's sales representative and distributor through the end of 2012 and also would retain the right to royalties and commissions through the end of 2013. The 2012 termination agreement included a mutual release of all claims existing as of June 30, 2012. The agreement also

---

[2] Lee participated in this lawsuit in his individual capacity and as the sole trustee of the Noel Lee Living Trust. For simplicity we refer only to "Lee," whether as a formal matter Lee acted personally or in his capacity as trustee.

contained a provision authorizing the award of costs and expenses, including reasonable attorney fees, to the prevailing party in an action to enforce the agreement.  (*Monster I*, *supra*, 12 Cal.App.5th at p. 1220.)

In December 2012 Lee partially exercised his put rights under the parties' 2009 agreements and sold back a 3.75 percent interest in Beats, retaining a 1.25 percent ownership stake.  The $300 million price paid by HTC for its 51 percent interest in Beats was used to determine the price of Lee's interest.  The December 2012 unit repurchase agreement between Beats and Lee contained broad mutual releases of all claims and causes of action.  (*Monster II*, *supra*, B285994, p. 8.)

In October 2013 Lee sold back to Beats his remaining 1.25 percent interest in the company for $12.9 million.  The terms of the sale were set forth in a 2013 unit repurchase agreement, which contained a broad set of mutual releases in language substantially similar to the releases in the December 2012 unit repurchase agreement and included an indemnity provision stating that each party held the other harmless from and against all claims, losses and expenses, including attorney fees, arising out of or related to any breach of the agreement.  (*Monster I*, *supra*, 12 Cal.App.5th at p. 1220.)  The 2013 agreement provided it would be governed by Delaware law.  (*Monster II*, *supra*, B285994, p. 12.)

2. *Monster's and Lee's Tort Claims and the Summary Judgment Motions*

In late May 2014 Apple acquired Beats for approximately $3 billion.  (*Monster II*, *supra*, B285994, p. 12.)  Monster and Lee filed this lawsuit on January 6, 2015.  The complaint's 11 causes of action were predicated on two theories of fraud:  Monster

alleged Beats, assisted by HTC, defrauded it by relying on a sham transaction with HTC to improperly trigger the change-of-control provision in the 2009 license agreement. Lee alleged Beats and Wachter fraudulently induced him to sell his 5 percent interest in Beats back to the company in December 2012 and September 2013 for less than they knew it was worth.

Beats moved for summary judgment on April 28, 2016, arguing the contractual releases barred most of the claims alleged by Monster and Lee. Beats additionally argued the tort claims based on allegations it had falsely represented a change of control occurred when HTC acquired its 51 percent interest in Beats in 2011 failed because the undisputed evidence established the transaction was not a sham. With respect to Lee, Beats argued it did not owe him any fiduciary duties and the statements upon which he purportedly relied when selling back his remaining interest in the company were true when made.[3]

---

[3] HTC and Wachter also moved for summary judgment. HTC's motion principally argued the undisputed facts established its acquisition of a 51 percent interest in Beats in 2011 was a legitimate business transaction and could not provide the basis for a claim it had aided and abetted any fraud or breach of fiduciary duty by Beats. Wachter, in addition to pointing to Monster's and Lee's releases, argued there was no evidence his statements to Lee were false or were anything other than nonactionable statements about future events and the evidence indisputably established that Lee did not reasonably rely on his statements in deciding to sell his interest in Beats.

3. *The Trial Court's Ruling Granting Summary Judgment and Order That the Issue of Attorney Fees Be Heard by Motion*

The trial court granted Beats's motion on August 29, 2016.[4] In its order the court ruled the 2009 license agreement gave Beats the unfettered right to terminate the agreement upon a change of control. Monster had no right of approval, and the change in control did not have to be objectively reasonable. In addition, Monster and Lee failed to present evidence creating a triable issue of fact to support the claim the 2011 acquisition was part of a sham transaction. Accordingly, all claims based on the purported misrepresentation a change of control had occurred failed as a matter of law. The court also ruled no fiduciary relationship existed between Beats, on the one hand, and Monster or Lee, on the other hand, finding, in part, the 2009 license agreement did not create a joint venture between Monster and Beats. Finally, the court concluded the releases signed by Monster in 2012 and by Lee in 2012 and 2013 barred their claims against Beats and Wachter. (*Monster II, supra,* B285994, pp. 14-15.)

The court's order granting the motion for summary judgment dismissed Beats with prejudice from the complaint and ordered the case to proceed to trial on the first and third causes of action of Beats's cross-complaint against Monster and Lee—that is, Beats's contention that Monster and Lee breached the release provisions of the 2012 termination agreement (first cause of action) and Lee breached the release provisions of the 2013 unit

---

[4] HTC's and Wachter's motions were also granted.

7

purchase agreement (third cause of action) by filing the lawsuit.[5] Beats alleged those breaches caused it to expend money, time and other resources to defend against Monster and Lee's "meritless and released claims in the litigation."

In further proceedings Beats argued its entitlement to recover attorney fees incurred in defending against Monster's complaint was properly heard by the court, rather than a jury, pursuant to Civil Code section 1717. It asserted the fact it sought those fees as damages rather than as posttrial costs was immaterial. Monster responded that Beats was not seeking to recover its fees as contract damages; as such, Monster was entitled to a jury determination of the issue. The court agreed with Beats and on September 13, 2016 ordered that the attorney fees issue be "heard by way of a noticed motion resolved by the court." (*Monster I*, *supra*, 12 Cal.App.5th at p. 1223.)

4. *Monster and Lee's Petition for Writ of Mandate*

On October 17, 2016 Monster and Lee petitioned this court for a writ of mandate directing the trial court to permit a jury to hear the issue of attorney fees as contract damages. In their petition Monster and Lee asserted, "Given that damages sought as an element of a cause of action is an issue triable to a jury, Respondent erred in taking that issue away from the jury and electing, over the objection of Petitioners, to resolve that issue itself. [¶] Accordingly, writ relief is necessary because Respondent erred when denying Petitioners a jury trial on the

---

[5]     Beats had previously dismissed the second cause of action of its cross-complaint, which alleged Monster breached a nondisparagement provision in the 2012 termination agreement. (*Monster I*, *supra*, 12 Cal.App.5th at p. 1222, fn. 2.)

8

issue of Beats' damages."[6]  In their prayer for relief Monster and Lee asked this court to issue a writ of mandate or prohibition "directing Respondent to vacate its September 13, 2016 Order that the issue of Beats' damages may be made by noticed motion and denying a jury trial on such issue, and to enter a new order that the issue of Beats' damages, pled as an element of Beats' claims in its Cross-Complaint, be heard by a jury trial."[7]  On November 16, 2016 we issued an alternative writ of mandate directing the superior court to vacate its September 13, 2016 order and to set a jury trial on "the issue whether real party [Beats] is entitled to attorney fees and costs as damages on its cross-complaint" or show cause why this court should not issue a peremptory writ of mandate requiring the superior court to do so.

Describing the issue presented in the writ proceeding as whether the trial court was authorized to act as the trier of fact in determining the amount of fees Beats was entitled to recover

---

[6]  We take judicial notice pursuant to Evidence Code sections 452 and 459, subdivision (a), of the petition for writ of mandate and the reply in response to Beats's return to alternative writ filed by Monster and Lee in *Monster I, supra*, 12 Cal.App.5th 1214.  In addition, we augment the record on our own motion pursuant to California Rules of Court, rule 8.155(a)(1)(A) to include documents filed in the case in superior court that were part of the record in *Monster I* and *Monster II* but not included by the parties in their appendices in this appeal.

[7]  In their reply in response to Beats's return to the alternative writ, Monster and Lee again emphasized their petition sought a jury trial on the issue of damages, not liability for breaching the 2012 and 2013 agreements as alleged by Beats in the first and third causes of action of its cross-complaint.

9

as damages on its breach of contract claims (*Monster I*, *supra*, 12 Cal.App.5th at p. 1227), this court held Monster (and Lee) had a right to have a jury decide that issue. We issued a peremptory writ of mandate as requested by Monster and Lee commanding the superior court to vacate its September 13, 2016 order and to "issue a new order directing that Monster and Lee are entitled to a jury trial to determine the amount of those attorney's fees." (*Id.* at p. 1232.) Monster and Lee did not seek, and we did not order, a jury trial (or any trial at all) on the issue of liability for breach of contract as alleged by Beats in its cross-complaint.[8]

5. *Trial on Beats's Damages and Affirmance of the Judgment and Postjudgment Orders*

Following our order for issuance of the peremptory writ, Beats tried the issue of damages on its cross-complaint against Monster and Lee to a jury in December 2017. The jury returned a verdict in favor of Beats for slightly more than $11.5 million, the attorney fees and costs it had incurred in defending against Monster's and Lee's claims through August 31, 2016. (*Monster II*, *supra*, B285994, p. 3.) In its judgment entered January 23, 2018 the trial court also ordered that Beats was entitled to costs and attorney fees incurred on or after September 1, 2016, as well as prejudgment and postjudgment interest. The trial court amended the judgment on several occasions to include an

---

[8]     In a footnote rejecting Beats's contention, made at oral argument, that it was entitled to attorney fees pursuant to Civil Code section 1717 as the prevailing party on the breach of contract claims alleged in its cross-complaint, we explained that Beats had not yet prevailed on these claims "because there has been no determination of damages, a necessary element of the claims." (*Monster I*, *supra*, 12 Cal.App.5th at p. 1227, fn. 4.)

additional $2.6 million in fees and costs and specific amounts for prejudgment and postjudgment interest. Monster and Lee filed a timely notice of appeal from each iteration of the judgment, and we ordered the appeals consolidated. (*Id.* at pp. 3-4.)

On appeal Monster and Lee argued the trial court had erred in relying on the release agreements to grant Beats's motion for summary judgment, contending both that enforcement of the releases would violate the anti-waiver provisions of the Corporate Securities Law and that they had raised triable issues of fact whether the releases were unenforceable because procured by fraud. They also contended Monster had viable claims for fraud and constructive fraud based on the HTC transaction (because Beats falsely represented it was a bona fide change-of-control transaction and violated its fiduciary duties arising from their joint venture) and asserted the trial court's ruling was based in part on an erroneous understanding of the scope of the implied covenant of good faith and fair dealing. Lee similarly argued he had viable claims for common law fraud based on the sham change of control and misrepresentations made to him when he sold his interest in Beats, as well as viable claims under the Corporate Securities Law.

In the final section of their opening brief Monster and Lee, explaining the summary judgment against them was the predicate for Beats's recovery of attorney fees and prejudgment and postjudgment interest, asserted, because summary judgment "was erroneously entered, these awards must be vacated."[9] As we emphasized in *Monster II*, no other, separate challenge was made

---

[9] In their reply brief Monster and Lee simply noted Beats did not dispute that, if summary judgment were to be reversed, the award of attorney fees, costs and interest must be vacated.

to the jury's award of damages on the cross-complaint or the trial court's several postjudgment orders.  (*Monster II*, *supra*, B285994, p. 4.)

We affirmed the judgment and postjudgment orders in full. (*Monster II*, *supra*, B285994, pp. 2, 36.)  We first held Monster and Lee failed to show any triable issue of material fact to support their claim the HTC transaction did not constitute a bona fide change of control within the meaning of the 2009 license agreement, explaining, when viewed in light of the express provisions of the parties' agreement, the implied covenant of good faith and fair dealing did not prohibit a transaction designed by Beats to effect a change in control.  (*Id.* at p. 16.)  We also held Monster had no viable fraud or constructive fraud claims based on Beats's representations concerning the HTC transaction or its failure to disclose its intent to structure the transaction to accomplish a change in control. (*Id.* at pp. 25-26.)  We then wrote, "In light of our ruling on the substance of Monster's and Lee's claims concerning the Beats-HTC transaction, we need not address the parties' dispute regarding the enforceability of the releases given by Monster and Lee as they relate to that transaction."  (*Id.* at p. 27.)

Turning to Lee's separate causes of action, we affirmed the trial court's ruling with respect to the fraud and securities law claims involving Lee's December 2012 sale of a portion of his interest in Beats because he had not alleged any false statements or misrepresentations had been made to him in connection with that transaction or that Beats (or Wachter) failed to disclose any material information.  (*Monster II*, *supra*, B285994, p. 29.)  As to Lee's contention Beats's discussion with Apple during fall 2013 should have been disclosed to him prior to the sale of his

remaining 1.25 percent in the company, we held under Delaware law, which the parties had agreed would govern the validity, interpretation and effect of the 2013 unit repurchase agreement, Beats was entitled to enforce the agreement's nonreliance provision by which it disclaimed any responsibility for any otherwise actionable omission regarding the status of its discussions with Apple.[10]

[10] Although unrelated to their argument for reversal of the order denying the motion to amend the judgment, Monster and Lee inaccurately assert we affirmed the trial court's order granting summary judgment in *Monster II* on a legal basis that had not been briefed by the parties on appeal, "i.e. the binding effect under Delaware law of 'non-reliance' clauses in the Agreements." In fact, Beats's respondent's brief expressly addressed that issue, which, as discussed, we considered only when evaluating Lee's claim of fraud in connection with his October 2013 sale of a 1.25 percent interest in Beats, not any of Monster's causes of action or Lee's other claims. On page 63 of its brief Beats argued, "These non-reliance clauses are enforceable under Delaware law, which governs the 2013 Unit Repurchase Agreement." Monster and Lee then devoted a four-page section of their reply brief to the argument that California, not Delaware, law governed Lee's claim and, as a result, the nonreliance provision in the 2013 unit purchase agreement did not "immunize" Beats. (See generally *Hooked Media Group, Inc. v. Apple Inc.* (2020) 55 Cal.App.5th 323, 336, fn. 1 [although Code of Civil Procedure section 437c, subdivision (m)(2), provides that, "[b]efore a reviewing court affirms an order granting summary judgment or summary adjudication on a ground not relied upon by the trial court, the reviewing court shall afford the parties an opportunity to present their views on the issue by submitting supplemental briefs," supplemental briefing is not required where the parties have already briefed the issue]; *Goddard v. Department of Fish & Wildlife* (2015) 243 Cal.App.4th 350, 359,

13

Monster and Lee did not seek a rehearing in this court. In a petition for review in the Supreme Court, filed October 2, 2020 (S264792), Monster argued only that our holding that Beats's conduct in connection with the HTC change-of-control transaction did not breach the implied covenant of good faith and fair dealing in the 2009 license agreement unduly narrowed the protection provided by the implied covenant and that we erred in concluding Beats had not breached any fiduciary duties it might owe as a joint venturer with Monster. In a separate petition for review Lee asked the Court to grant review to decide whether we had improperly applied Delaware law to find the nonreliance clause in the 2013 unit repurchase agreement enforceable, thereby affirming the trial court's ruling on Lee's common law fraud and securities law claims. Neither petition addressed our election not to decide the enforceability of Monster's and Lee's releases or our affirmance of the judgment in favor of Beats on the cross-complaint.

The Supreme Court denied the petitions on November 10, 2020. Our remittitur issued on November 19, 2020.

6. *The Motion To Amend the Judgment*

When the case returned to the trial court, Beats moved for an order releasing to it the cash deposit filed by Monster to stay enforcement of the judgment pending appeal and for an additional award of attorney fees and costs incurred in successfully responding to Monster and Lee's appeal. In opposition Monster and Lee, referring to their contemporaneously

fn. 5 [supplemental briefing is not required under Code of Civil Procedure section 437c, subdivision (m)(2), where the parties have addressed the issue in their briefs].)

14

filed motion to amend the judgment, argued the award of contract damages plus postjudgment interest had not yet been subject to any appellate review and, therefore, was not final and could not be enforced. They also contended postjudgment interest should be calculated using the lower Delaware rate of interest, not California's, pursuant to the Delaware choice of law provision in the 2013 unit purchase agreement.

Monster and Lee's motion to amend the judgment pursuant to Code of Civil Procedure section 187, filed January 15, 2021, began by explaining this court in *Monster II* had affirmed the summary judgment in favor of Beats without reviewing the trial court's ruling that the 2012 and 2013 releases were enforceable. They then argued, although conceding it was entirely within our authority to decide the appeal on alternative grounds, "[t]he legal consequence of the Court of Appeal's explicit decision *not* to review any of the issues regarding the enforceability and effect of the Releases, however, was to leave *unreviewed and unenforceable* all of this Court's rulings in that regard, including its ruling that Plaintiffs *breached* those Releases by suing Defendants." Monster and Lee asked the trial court to amend the judgment, affirmed on appeal, to remove the award of damages on Beats's cross-complaint to preserve their right to seek appellate review of the trial court's ruling on the enforceability of the releases and further requested the court reconsider its prior rulings on that issue.

The trial court on February 9, 2021 issued a brief minute order denying Monster and Lee's motion to amend the judgment and granting Beats's motions to apply the cash deposit and for attorney fees. On March 4, 2021 the court signed and entered a third amended judgment in favor of Beats on Monster and Lee's

15

complaint and Beats's cross-complaint. Monster and Lee filed a timely notice of appeal from the third amended judgment.

## DISCUSSION

1. *The Judgment Awarding Beats Damages on Its Cross-complaint Is Not Void or Otherwise Unenforceable*

As discussed, in the trial court Monster and Lee contended only that amendment of the judgment was necessary to preserve their right to appellate review of the award of damages to Beats on its cross-complaint. While not entirely abandoning that contention, Monster and Lee now make two, somewhat inconsistent arguments that the portion of the judgment awarding Beats damages is unenforceable and, therefore, that the trial court erred in denying their motion to amend the judgment. First, they claim Beats never obtained a legal determination of their liability for breach of contract that would entitle Beats to an award of damages, rendering void the judgment we affirmed in *Monster II*. Second, they assert, because we decided *Monster II* without determining whether the releases in the 2012 and 2013 agreements were enforceable (because we did not need to reach that issue), the trial court's rulings regarding the releases—and the consequent award of damages to Beats for Monster's and Lee's breach of the contracts containing them—are unenforceable. The first argument misrepresents the record and ignores the positions advocated by their counsel before the trial court and this court in *Monster I* and *Monster II*. The second argument fundamentally misconstrues the Supreme Court's decision in *Samara v. Matar* (2018) 5 Cal.5th 322.

16

a. *Monster and Lee conceded (expressly and by implication) the summary judgment ruling necessarily included a finding they had violated the 2012 and 2013 agreements*

It is true, as Monster and Lee repeatedly emphasize, that the trial court's August 29, 2016 order granting Beats's motion for summary judgment did not also grant summary judgment or summary adjudication on any claims asserted in Beats's cross-complaint.  All the court's order said in that regard was that the case would proceed to trial on the first and third causes of action of Beats's cross-complaint against Monster and Lee.  Monster and Lee's singular focus on the language of the August 29, 2016 order, however, while ignoring all else that transpired between the entry of that order and the court's ruling denying their motion to amend the judgment on February 9, 2021, creates a grossly distorted picture of what actually occurred with respect to the issue of liability on the cross-complaint.

At a hearing on August 31, 2016, two days after the court granted the motion for summary judgment, the court asked counsel for Beats whether Beats was simply seeking attorney fees on the two causes of action remaining in its cross-complaint.  Counsel responded yes.  The court then asked whether that issue could be decided by noticed motion.  Counsel again answered yes.  The court then asked counsel for Monster and Lee whether he agreed or disagreed.  After counsel said he disagreed and the court asked why, counsel explained that attorney fees were sought as damages for breach of contract and, under established case law, because proof of damages was an element of the two causes of action, Monster and Lee were entitled to a jury trial on the issue.  After confirming with Monster and Lee's counsel that the court's previous rulings determined the releases in the 2012

17

and 2013 agreements (at issue in the first and third causes of action of the cross-complaint) were "valid as a matter of law," the court inquired what remained for the jury to determine.  In response, counsel for Monster and Lee stated the court would direct the jury "as to the liability portion, but not as to the damage portion."[11]  From that point forward, the parties and the court proceeded with the understanding that the issue of liability had been resolved and the only remaining question was whether a jury trial was required to determine the amount of damages.

More than four years later, different counsel for Monster and Lee confirmed this understanding, explaining in the motion to amend the judgment that the trial court had held Monster's and Lee's breaches of the releases "resulted *ipsu iure* [by operation of law] from this Court's ruling the Releases barred Plaintiffs from asserting their claims of fraud."  Counsel did not contend no determination of liability by the trial court had been made or that its conclusion that breaches of the releases had been established by the court's rulings on the summary judgment motion was incorrect, but argued only that the damage award remained subject to judicial review because we did not reach any issue of the scope, validity or enforceability of the releases when deciding *Monster II*.

---

[11]     Although counsel used the term "instructed," rather than "directed," in context it is clear he meant only the issue of damages, and not liability, remained for the jury to determine. As demonstrated by the colloquy that followed between the court and counsel concerning a trial on attorney fees as damages, counsel unquestionably intended for the jury to be given instructions on the proper methods for calculating Beats's damages.

18

In the intervening years, Monster and Lee, represented by experienced, sophisticated counsel, never argued the issue of their liability for breach of contract had not been established.  As discussed, when seeking writ relief from this court after the trial court concluded the attorney fees issue should be determined by motion, rather than a jury trial, Monster and Lee did not contend the issue of liability had not been decided or request that we order a jury trial on that issue.  And when the case returned to the trial court after we granted relief in *Monster I*, and further argument ensued as to what issues required a jury trial and what, if anything, could still be done by way of motion, counsel for Monster and Lee again insisted only that they were entitled to a jury trial "dealing with the issue of fees and costs incurred up to and including the order on the summary judgment.  They get whatever they get on that, okay.  There's then a judgment that's entered on the complaint and the cross-complaint, right, the two competing affirmative claims, you'd have a judgment, and, if there is a basis for a prevailing party motion for fees, which would be from post whatever it was . . . , that would be their motion for fees as a prevailing party."

That, of course, is exactly what happened.  A jury trial was held on the issue of attorney fees.  Judgment was entered on the complaint and cross-complaint, and postjudgment motions were heard regarding additional attorney fees to Beats as the prevailing party.  And to reiterate, on appeal in *Monster II* the only argument made by Monster and Lee with respect to the portion of the judgment awarding damages to Beats on its cross-complaint was that, if we reversed the order granting summary judgment on the complaint, we should also reverse the award on the cross-complaint.  At no point did Monster and Lee contend, as

19

they do now, that the issue of liability for breaching the 2012 and 2013 agreements had never been decided by the trial court. The judgment in this case was not entered in violation of Monster's and Lee's rights to due process and is not void (on its face or otherwise).

*Curry v. Curry* (N.Y.App.Div. 2005) 14 A.D.3d 646 [789 N.Y.S.2d 307], an opinion from New York's intermediate appellate court on which Monster and Lee rely to argue the judgment we affirmed in *Monster II* is void on its face, does not assist them. The *Curry* court held a judgment must conform to the underlying decision on which it is based and, if there is any inconsistency between the two, the decision controls. (*Curry*, 789 N.Y.S.2d at p. 308.) We have no quarrel with that general principle. However, the issue before us is not whether the third amended judgment strictly conforms to the August 29, 2016 order granting Beats's motion for summary judgment. There is no dispute that it does not. But to prevail on appeal Monster and Lee needed to establish that the trial court never decided its ruling on summary judgment also determined Monster's and Lee's liability for breach of contract, leaving only unresolved the issue of damages. The trial court clearly made that determination, and it did so with the active acquiescence of counsel for Monster and Lee.[12]

_____

[12]    To the extent Monster and Lee may have had a viable argument that the trial court failed to comply with all necessary formal requirements for making its liability determination, they forfeited the issue by failing to challenge the judgment on that basis in *Monster II*, *supra*, B285994. (See *People v. Rosas* (2010) 191 Cal.App.4th 107, 116 [waiver precludes a subsequent appeal based on issues ripe for consideration in a prior appeal and not brought in that proceeding]; *People v. Senior* (1995)

b. *Monster and Lee forfeited any further right to appellate review of the award of damages on the cross-complaint*

The Supreme Court in *Samara v. Matar*, *supra*, 5 Cal.5th 322 (*Samara*) considered the claim- and issue-preclusive significance, in future litigation, of a conclusion relied upon by the trial court and challenged on appeal, but not addressed by the appellate court. (*Id.* at p. 326.) Overruling its 150-year-old decision in *People v. Skidmore* (1865) 27 Cal. 287, the Court held "the preclusive effect of the judgment should be evaluated as though the trial court had not relied on the unreviewed ground." (*Samara*, at p. 326.)

The claim- and issue-preclusion issue before the Court in *Samara*, *supra*, 5 Cal.5th 322 arose from a professional negligence lawsuit filed by a patient (Samara) against two dentists (Drs. Nahigian and Matar). Samara alleged Dr. Nahigian had negligently performed oral surgery on her and Dr. Matar, as Dr. Nahigian's employer, was vicariously liable for Dr. Nahigian's negligence. The trial court granted summary judgment for Dr. Nahigian on alternative grounds—Samara's negligence claim was barred by the statute of limitations and Samara could not establish causation. This court affirmed the judgment in favor of Dr. Nahigian based solely on the statute of limitations, expressly declining to reach the issue of causation. (*Samara v. Estate of Stephen Nahigian, D.D.S.* (Nov. 10, 2014,

---

33 Cal.App.4th 531, 538 [same]; see also *Amato v. Mercury Casualty Co.* (1997) 53 Cal.App.4th 825, 839 [time for insurer to advance contention default judgment against its insured was the product of collusion was first appeal, when the issue could be raised, not a second appeal in the case].)

B248553) [nonpub. opn.].)  Following our decision in favor of Dr. Nahigian, Dr. Matar moved for summary judgment, arguing the question of Dr. Nahigian's liability had been conclusively determined in Dr. Nahigian's favor (issue preclusion) and Dr. Matar was thus entitled to judgment on Samara's vicarious liability claim as a matter of law.  The trial court granted Dr. Matar's motion, concluding Samara's claim for vicarious liability was barred under the doctrine of claim preclusion.

We reversed the judgment in favor of Dr. Matar, and the Supreme Court affirmed our decision.  (See *Samara*, *supra*, 5 Cal.5th at p. 338.)  Rejecting one of Dr. Matar's arguments, the Supreme Court explained, "It is true that a trial court's judgment is presumed correct, and so ordinarily will not be set aside on appeal absent an affirmative showing of reversible error. [Citations.]  But that principle governs how appellate courts should review trial court determinations; it does not speak to the preclusive effect, in future litigation, of a challenged trial court determination that evaded appellate review.  The distinction is particularly clear under California law:  Although the presumption of correctness applies while direct review is ongoing [citation], under California law, an unsatisfied trial court judgment has no preclusive effect until the appellate process is complete." (*Id.* at p. 335.)

Monster and Lee contend, under *Samara*, portions of a judgment not actually reviewed on appeal are not final or binding.  Because our opinion in *Monster II* expressly declined to evaluate any of the trial court's rulings regarding the enforceability and effect of the 2012 and 2013 releases (because unnecessary to our decision), they continue, the award to Beats of damages on its cross-complaint is not final, and it was error for

22

the trial court not to amend the judgment in order to preserve their right to appellate review.

This argument betrays a fundamental misunderstanding of the Supreme Court's decision in *Samara*, which, as stated, concerned the preclusive effect in future litigation of a trial court's decision on a legal ground not reached on appeal, not the finality of a judgment, as here, properly affirmed on one of several alternative bases. To be sure, because we did not consider the scope, validity or enforceability of the releases in *Monster II*, under *Samara* the trial court's ruling enforcing the releases may well have no preclusive effect in any future litigation in which that issue might arise. But the judgment awarding damages to Beats on its cross-complaint affirmed in *Monster II* (just as the judgment in favor of Dr. Nahigian affirmed in *Samara v. Estate of Stephen Nahigian, D.D.S.*, *supra*, B248553) is final and binding.

To reiterate once again, when appealing the judgment in *Monster II* in favor of Beats on both the complaint and cross-complaint, the only argument made by Monster and Lee concerning the cross-complaint was, because summary judgment had been erroneously granted on the complaint, the damages award on the cross-complaint also had to be vacated. Their counsel did not contend—either in briefing, a petition for rehearing or the petition for review in the Supreme Court—that, because that award rested specifically on the enforceability of the releases, this court needed to (or should have) addressed that issue, not simply the propriety of summary judgment in

23

general.[13] While counsel and their clients may now regret their tactical decision, it is far too late to revisit it in this appeal.

3. *Monster and Lee Forfeited Any Challenge to the Trial Court's Use of California's Statutory Rate for Prejudgment and Postjudgment Interest*

Both the August 2009 Beats operating agreement, which Lee signed as the owner of a 5 percent interest in the company, and the 2013 unit purchase agreement pursuant to which Lee sold back his remaining 1.25 interest in the company contained Delaware choice of law provisions. Explaining that Delaware's legal rate of interest varied from 7 percent to 7.5 percent during the relevant period, and emphasizing that Beats had consistently argued that Delaware law governed Lee's fraud and breach of fiduciary duty claims (as this court held when ruling the nonreliance provision in the 2013 unit purchase agreement was enforceable under Delaware law), Monster and Lee argue the trial court committed reversible error by calculating Beats's prejudgment and postjudgment interest using California's 10 percent statutory rate, rather than the lower Delaware rate.

---

[13] To put perhaps too fine a point on it, rather than asserting generally that the damage award must be reversed because summary judgment was erroneously entered, counsel could have argued, "The finding that Monster and Lee had breached the release agreements was the predicate for the award of damages to Beats. Because Monster and Lee raised triable issues of fact whether the releases were enforceable, as demonstrated in argument section A.2. of this brief, the judgment in favor of Beats on its cross-complaint must also be reversed." And if counsel believed that this more specific contention was implicit in their briefing and we erred in overlooking it, they could have raised that issue in a petition for rehearing.

Monster (which, in any event, was not a party to the two agreements containing Delaware choice of law provisions) and Lee have forfeited this argument. In the second amended judgment on the complaint and cross-complaint, entered July 31, 2018, the trial court explained that on February 27, 2018 it had ruled Beats was entitled to recover prejudgment interest between the date of the verdict (December 21, 2017) and the date of entry of the initial judgment (January 23, 2018). The judgment then stated, "This amounts to $104,680.21"—10 percent of the damages award of $11,578,265.49 for 33 days. The court also noted it had previously ruled that Beats was to recover postjudgment interest, which the second amended judgment provided was to accrue "at the statutory rate from January 23, 2018, through the date of payment."

In context, the trial court's award of postjudgment interest at "the statutory rate" after having calculated prejudgment interest using the 10 percent rate specified in Civil Code section 3289, subdivision (b), for interest chargeable after a breach of contract, was unquestionably intended to similarly apply California's 10 percent rate. Nothing in the record suggests Monster and Lee in 2018, when the second amended judgment was entered, made a contrary argument. And in their appeal of the original, first amended and second amended judgments in *Monster II*, Monster and Lee did not challenge Beats's entitlement to prejudgment and postjudgment interest if the judgment was not reversed, nor did they contest the applicability of California's 10 percent statutory rate of interest to the calculation of the amount of prejudgment interest due or its use to determine postjudgment interest. Their belated argument that the trial court should have used the Delaware

25

interest rate—even if it were correct—has been forfeited. (See *People v. Rosas* (2010) 191 Cal.App.4th 107, 116; *People v. Senior* (1995) 33 Cal.App.4th 531, 538.)

4. *Monster and Lee Failed To Demonstrate the Trial Court Abused Its Discretion by Including Postjudgment Interest Accruing Until the Date the Judgment Was Paid*

In a second amended order granting Beats's motion for order applying cash deposit and interest filed March 17, 2021, the trial court directed the clerk of the court to transfer to Beats the principal amount of the cash collateral deposited by Lee on behalf of the Monster parties on March 13, 2018, plus all accrued interest, in partial satisfaction of the liability owed by Monster and Lee to Beats. Those funds were apparently not released to Beats until April 19, 2021, a delay that Monster and Lee assert "was caused solely by the Clerk of the Superior Court who controlled those Funds, not by Appellants." Monster and Lee's final argument is that the trial court abused its discretion in awarding postjudgment interest through April 19, 2021.

Monster and Lee do not dispute that Beats was not actually paid from the cash deposit until April 19, 2021. Nor do they contend the delay in payment resulted from the superior court clerk's misconduct or bad faith, rather than simply from quotidian administrative processing. Monster and Lee elected to use a cash deposit pursuant to Code of Civil Procedure section 995.710 to stay enforcement of the judgment during the appeal in *Monster II*, rather than another form of security. On appeal they cite no authority and advance no factual basis for us to conclude it was an abuse of discretion for the court to order that postjudgment interest accrued until the judgment was satisfied. (See *City of Santa Maria v. Adam* (2012) 211 Cal.App.4th 266, 287 ["we may disregard

26

conclusory arguments that are not supported by pertinent legal authority or fail to disclose the reasoning by which the appellant reached the conclusions he wants us to adopt"]; see also *WFG National Title Ins. Co. v. Wells Fargo Bank, N.A.* (2020) 51 Cal.App.5th 881, 894.)

## DISPOSITION

The order denying Monster and Lee's motion to amend the judgment and granting Beats's motions to apply the cash deposit and for attorney fees and the third amended judgment entered thereafter are affirmed.  Beats is to recover its costs on appeal.



PERLUSS, P. J.

We concur:


SEGAL, J.


FEUER, J.

27